POLZIN, Appellant, vs. INDUSTRIAL COMMISSION and others, Respondents.

*June 4—June 26, 1958.*

601

For the appellant there was a brief by *Robert D. Murphy* and *Harry E. White,* both of Marinette, and oral argument by *Mr. Murphy.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

Martin, C. J.   Appellant raises two questions on appeal. First, it is contended that since there is no evidence in the record that he sustained a 10 per cent permanent disability, the finding of 10 per cent was pure speculation by the commission.

In *Sheehan v. Industrial Comm.* (1956), 272 Wis. 595, 600, 76 N. W. (2d) 343, this court reiterated the rule that—

"The determination of the extent or duration of disability of an applicant for workmen's compensation presents a question of fact and not of law, and the findings are conclusive if supported by credible evidence. *Squires v. Industrial Comm.* (1946), 248 Wis. 189, 191, 21 N. W. (2d) 264; *Hinch v. Industrial Comm.* (1951), 260 Wis. 47, 49 N. W.

(2d) 714; *Gallenberg v. Industrial Comm.* (1955), 269 Wis. 40, 68 N. W. (2d) 550."

We cannot see that the appellant was prejudiced by the finding of 10 per cent disability. Both Dr. Nellen and Dr. Burns testified that in their opinion the disability was five per cent. Clearly, if the commission had made a finding of five per cent, its finding would have been conclusive notwithstanding the 90 per cent estimate given by Dr. Dewane and the opinion of Dr. Kaufman that plaintiff was temporarily totally disabled.

In *McCune v. Industrial Comm.* (1952), 260 Wis. 499, 504, 50 N. W. (2d) 683, where temporary total disability was claimed from October 7, 1948, through April 30, 1949, the medical testimony was to the effect that temporary disability ended on December 27, 1948, but the commission found that it ended on February 14, 1949. This court, in upholding the commission's finding, said:

"This leaves, as the only medical testimony on the question of when the temporary total disability ended, Dr. Regan's statement that as of December 20, 1948, the employee would be able to return to continuous work in about a week thereafter. This testimony would have supported a finding that the employee was able to return to work on December 27, 1948, and therefore the employee was not prejudiced by the finding that the temporary total disability ended February 14, 1949, inasmuch as the burden of proof on such issue is on the employee."

Appellant contends that the commission's finding of 10 per cent disability shows it disregarded all the medical testimony and based its finding on speculation.

In many cases of this kind, medical experts express opinions with respect to percentage of disability as between one figure and another, or one expert may fix a percentage higher or lower than does another, and it is for the commission to

make the determination upon which an award can be based. Appellant cites cases to the general rule that inferences must be drawn from established facts. It is true that in no case to which our attention has been called was there such a wide discrepancy between the percentages fixed by the doctors.

Appellant testified he has pain in his right leg and lower back which is relieved only by lying down; that he has no strength in his legs and has a tendency to fall; that he is unable to do even light work.

Dr. Nellen testified that his examination showed objective findings which would account for a five per cent disability because of the surgery and that appellant's subjective complaints are due to malingering. Dr. Burns likewise ascribed any disability above five per cent to malingering.

Dr. Dewane, in fixing disability at 90 per cent, testified he never observed any evidence of malingering. Dr. Kaufman testified ". . . my impression of the patient is that he is not a malingerer. Perhaps he exaggerated. I don't know to what degree. I don't think he is able to go back to work."

In *Giant Grip Mfg. Co. v. Industrial Comm.* (1956), 271 Wis. 583, 585, 74 N. W. (2d) 182, this court said:

"We have repeatedly said that it is the function of the Industrial Commission to evaluate medical testimony and determine its weight, and the commission's finding on disputed medical testimony is conclusive. *Keller v. Industrial Comm.* (1955), 271 Wis. 225, 229, 72 N. W. (2d) 740, and cases there cited."

We cannot agree with counsel for the respondents that when medical experts disagree as to the extent of disability the commission may fix the disability *anywhere* between the highest and the lowest estimates (here 90 per cent and five per cent). For instance, a finding of 40 or 50 per cent disability in this case, which would not approximate either of the percentages given by the medical experts, would not find support in the evidence. Such a finding would be a

compromise based on speculation. The question of malingering was the point on which the medical experts disagreed. It is clear that the commission was convinced there was malingering and its finding based on that belief is supported by the testimony of Drs. Nellen and Burns. True, the commission fixed the disability at a slightly higher percentage than did the doctors, but the five per cent variance does not render the finding speculative.

In *Kiesow v. Industrial Comm.* (1934), 214 Wis. 285, 287, 252 N. W. 604, the employee had suffered a previous injury to his foot and had received compensation based on permanent partial disability. In proceedings for compensation for the second injury one physician testified the total disability to the foot was 35 per cent. A second doctor testified that it was 20 per cent, 10 per cent due to the first injury and 10 per cent to the second. The commission found the disability due to the second injury was 15 per cent, five per cent higher than that fixed by the second doctor. In upholding the award based on the commission's finding, this court said:

"Estimates of percentages of the character referred to are matters of some exactness, but they do not more than approach a reality for they rest in opinion."

This same view was taken by the trial court in this case when it held that the five per cent variance was not sufficient to constitute error, since "permanent disabilities cannot be pin-pointed with mathematical precision."

Appellant's next contention is that the commission should have granted his request that an independent medical examination be conducted. Sec. 102.17 (1) (c), Stats., provides in part:

"Whenever the testimony presented at any hearing indicates a dispute, or is such as to create doubt, as to the extent or cause of disability or death, the commission may

direct that the injured employee be examined or autopsy be performed, or an opinion of a physician be obtained without examination or autopsy, by an impartial, competent physician designated by the commission . . . ."

As originally enacted in 1931 this section provided that the commission "shall" order the examination when the employer or injured employee requests it. It was later amended to read "may" as set out above. The amendment clearly showed the legislature's intent to make the appointment of an independent medical examiner discretionary with the commission.

Appellant argues that the commission must have been in doubt in this case and thus its failure to order the examination constitutes an abuse of discretion. The difference between the commission's finding and the five per cent disability testified to by Dr. Nellen and Dr. Burns does not warrant the conclusion that the commission was in doubt. Both of these doctors, upon whose testimony the commission relied, are orthopedic physicians and surgeons of established reputation and we cannot say that it would have served any purpose to have another examination of the appellant.

*By the Court.*—Judgment affirmed.