BUTLER, Respondent, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Appellants.

*No. 167.   Argued January 4, 1973.—Decided January 30, 1973.*
(Also reported in 203 N. W. 2d 687.)

For the appellant Department of Industry, Labor & Human Relations the cause was argued by *James P. Altman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the appellants L & O Tile Company, Inc., and Employers Mutual Liability Insurance Company there was a brief by *Hart, Wightman & Thurow* and *Walter D. Thurow,* all of Madison, and oral argument by *Walter D. Thurow.*

For the respondent there was a brief and oral argument by *Jack Aulik* of Sun Prairie.

HANLEY, J. The sole issue on this appeal is whether it was error for the circuit court to set aside the findings of fact and order of the department with directions on remand to evaluate the claimant's disability in terms of actual wage loss, based upon the extent of impairment of earning capacity.

The authority relied upon by both circuit courts in setting aside the findings and order of the department is the case of *Wagner v. Industrial Commission* (1956), 273 Wis. 553, 79 N. W. 2d 264, 80 N. W. 2d 456 where this court held that in a situation where it is impossible to determine by physical examination the percentage of permanent partial disability under the Workmen's Compensation Act on the basis of a comparison to the body as a whole, it must be determined on the basis of wage impairment which is the difference between earning capacity before and after the injury. The claimant contends that *Wagner* is determinative of the outcome of this appeal while the respondents contend that subsequent holdings of this court have reversed *Wagner.* In order to adequately consider this question, the relationship of wage impairment to the total concept of disability must be placed in its historical perspective.

In Wisconsin, determinations as to permanent partial disability fall generally into two specific classes. Secs.

102.52 to 102.56, Stats., set forth with particularity a schedule of injuries and a procedure for computing those injuries into an ultimate award. On the other hand, nonschedule injuries which cause permanent partial disability are computed on the ratio which the nature of actual disability ". . . bears to one causing permanent total disability . . ." Sec. 102.44 (3). In either schedule or nonschedule injuries, any award for permanent partial disability must be based upon some kind of a prediction as to the impairment of earning capacity.

In the case of *Northern States Power Co. v. Industrial Comm.* (1947), 252 Wis. 70, 30 N. W. 2d 217, at page 76, this court stated:

"During the healing period it is possible to establish a wage loss because that is a past event. But since an award for permanent disability is to be made for all time at the end of this period it must be based upon some sort of prediction as to impairment of earning capacity. It appears to us that the legislature has specifically chosen in the case of nonschedule permanent partial disabilities the method of comparing the severity of the injuries causing such a disability with those causing permanent total disability."

As very thoroughly discussed in the *Northern States Power Co. Case*, prior to the 1923 amendments to the Workmen's Compensation Act, determinations of permanent partial disability were based on wage loss, rather than upon a percentage of body impairment. Although the decision in *Northern States Power Co.* did not remove earning capacity from the concept of disability, it did initiate a new approach to the question. "Thus, as to nonschedule and nonrelative permanent disabilities, in this state the effect on earning capacity is a conclusively presumed one instead of a specifically proved one based on the individual's actual wage loss experience." *Kohler Co. v. ILHR Department* (1969), 42 Wis. 2d 396, 406, 167 N. W. 2d 431.

The *Wagner Case* represented a very limited and narrow exception to the above-quoted general rule insofar

as it permitted a consideration of actual rather than presumed wage impairment. The reason for the exception was based on the highly unusual occupational disease involved. There, just like in the present case, the claimant had developed contact dermatitis and the court at page 567c stated:

"In the case of a nonschedule or relative injury due to industrial accident, such as was involved in the *Northern States Power Co. Case,* it is possible for a physician to examine the injured employee, after the healing period has been completed, to determine whether there has been any impairment of body functions. If such impairment is found, it is further possible for the physician to determine the ratio which such impairment bears to total disability and place a percentage on such permanent partial disability. *In case of some partially disabling occupational disease it may be also possible for a physician by physical examination to determine the percentage of permanent partial disability then existing.* However, in the instant case, it is utterly impossible to make a physical examination of Wagner and determine the percentage of permanent partial disability. This is because the sensitivity produced by the dermatitis cannot be measured objectivity. . . . *Any other result would leave Wagner remediless.*" (Emphasis added.)

The court was quite explicit in pointing out that while the visible effects of the dermatitis on Wagner's hand and arms had cleared up, it was rather his continuing ". . . [skin] sensitivity which has resulted in wage loss and partial permanent disability." *Wagner, supra,* at page 565.

Appellants contend that this court in the case of *Kohler Co. v. ILHR Department, supra,* overruled, sub silentio, the *Wagner* rule. We do not agree.

In *Kohler,* the court was confronted with a compensable injury based on silicosis and emphysema. In reaching the determination that permanent partial disability for this type of disease could be ascertained by a comparison of the injury itself with permanent total disability, the court, at page 406, stated:

"There is no reason to carve out an exemption for occupational disease cases. Sec. 102.01 (2), Stats., includes 'mental or physical harm to an employee caused by accident or *disease.*' (Emphasis supplied.)

"This holding was clearly suggested by this court in the *Wagner Case* where the statement is made:

" '. . . *In case of some partially disabling occupational disease it may be also possible for a physician by physical examination to determine the percentage of permanent partial disability. . .*' (Emphasis supplied.)

"In the *Wagner Case,* the court held that it was impossible to make such examination and determine such percentage because the sensitivity produced by the dermatitis. . . 'cannot be measured objectively.' Here we deal with silicosis and emphysema, not with dermatitis. Not only do we have the testimony of the treating physician, Dr. Evers, as to 50 percent permanent partial disability, but his prognosis that '. . . five years from now it might be more and it probably will be . . . .' "

*Kohler* did not overrule *Wagner;* it merely clarified it insofar as its rationale is limited only to those partially disabling occupational disease cases which "cannot be measured objectively." The physician in *Kohler* based his testimony on actual pulmonary lung function tests which revealed the claimant's lung function to be 50 to 60 percent of normal.

In the case at bar, such objectivity of the type employed in *Kohler* cannot even be remotely approximated. At the first hearing, Dr. Kemp, a practicing dermatologist, testified that outwardly the claimant's dermatitis had 95 percent cleared up. When asked what percentage of permanent partial disability this could be translated into, he stated that such a translation was impossible and without precedent. Appellants, however, rely on the testimony of Dr. Johnson who examined the claimant at the request of the department. Johnson determined the claimant's permanent partial disability to be five percent and when he was asked how he had arrived at that figure, he stated:

"Well, number one, the patient was working. The amount of eruption was localized to the hands, and he would state this would come and go. I am aware of the fact that the type of work this man was doing would get him away pretty well from chrome exposure. The patient himself was of the opinion that maybe having chrome on doors or turning on and off faucets would be a factor, but we know the chrome in things like this will not create a dermatitis, so at the time I saw this patient he had a limited eruption of his hands or his fingers, and this was causing him itching at the time I saw him, and there was eczema or dermatitis present at the time."

Dr. Johnson stated that his conclusion as to the percentage of permanent partial disability was based on the percentage of the loss of the body as a whole and he admitted that he had no idea what the claimant's wage loss was.

Dr. Johnson's testimony was directed solely to the claimant's *functional impairment* as evidenced by the almost total clearing up of the overt symptoms of the dermatitis, and not by the sensitivity to cement chromates which prohibit the claimant from working at his lifelong profession and for which under *Wagner* this court said was the real compensable injury.

We conclude that the circuit court was correct in its ruling which set aside the finding of fact and order of the department with directions to evaluate the claimant's disability in terms of actual wage loss, based upon the extent of impairment of earning capacity. We further determine that the record is complete as to claimant's wages before and after the date of injury and, therefore, a new hearing is not necessary.

*By the Court.*—Judgment affirmed, and cause remanded to the Department of Industry, Labor & Human Relations, with directions to determine an award of permanent partial disability based upon the extent of impairment of earning capacity.