BALCZEWSKI, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Respondents.

*No. 75–318. Argued March 2, 1977.—Decided March 29, 1977.*
(Also reported in 251 N. W. 2d 794.)

[4] *Wangerin v. State,* 73 Wis.2d 427, 243 N.W.2d 448 (1976).

488

For the appellant there was a brief by *Christopher J. Wilcox* and *La Follette, Sinykin, Anderson & Abrahamson* of Madison, and oral argument by *Mr. Wilcox.*

For the respondents the cause was argued by *Stephen M. Sobota,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. The judgment of the circuit court sustained the order of the Department of Industry, Labor and Human Relations dated October 19, 1973, which adopted the findings and order of the examiner, which established permanent partial disability for the claimant, Berniece Balczewski, at 55 percent. Berniece Balczewski has appealed from the circuit court's judgment. Her principal contention is that the testimony presented on her behalf at the hearing demonstrated *prima facie* that, by reason of her industrial injury, she was permanently precluded from being able to obtain or pursue any income-yielding occupation with reasonable continuity and, therefore, under existing law and the undisputed facts adduced at the hearing, she was entitled to a finding that she was totally disabled for industrial purposes. We conclude that such *prima facie* proof of total disability was adduced at the hearing and that such proof was not rebutted by her employer.

Because we conclude that the employer apparently failed to recognize the legal theory upon which the claimant proceeded and, because the claimant did not identify the theory of her claim with particularity, rather than reversing and determining that the disability was proved to be total, we reverse and remand for the purpose of permitting the employer to present evidence, if any it has, in rebuttal of the claimant's *prima facie* case.

The evidence shows that Berniece Balczewski was an unskilled worker whose formal schooling was completed in seventh grade. She was fifty-seven years old at the time of the accident. Her previous work history was entirely that of an unskilled laborer. At the time of her injury, she was working at the Mendota State Hospital in the laundry, where her work required lifting bags of wet laundry which weighed approximately 80 to 90 pounds. The evidence is undisputed that, after a fall down a stairway in the course of her employment in

1970, she was permanently unable to resume this type of heavy work.

She underwent surgery to alleviate the spinal injury, but the fusion performed in January 1972 did not restore her to her pre-accident physical condition. She has, to a limited extent, been able to perform housekeeping work at home, such as making beds and washing dishes. She is unable to vacuum a rug, sweep, or mop. She is unable to hold objects such as glassware and milk cartons. She is unable to hold a book for reading beyond five minutes. Even limited activities that she can perform, such as dishwashing, must be interrupted by rest periods. Her pain is constant, and her condition requires medication for the alleviation of the pain and to enable her to sleep.

In the prehearing briefs filed with the department, the attorney for Berniece Balczewski advised the department that he would rely on the testimony of an employment placement expert to demonstrate the claimant's total loss of earning capacity. That hearing testimony was given by Dr. John Wrage. Dr. Wrage holds a doctorate in applied psychology, with educational emphasis upon industrial placement. He is a licensed psychologist and licensed guidance counselor. For a number of years he was a vice president of the Gisholt Machine Company in Madison and was in charge of personnel for that corporation. Dr. Wrage has served as a consultant for the Department of Industry, Labor and Human Relations for the State of Wisconsin in respect to the placement of handicapped workers. At the time of the hearing, he operated two employment agencies in Madison, Wisconsin, and was responsible for the processing of 100–120 job applications a month. His expertise in regard to the employment market in the vicinity of Madison was undisputed.

He concluded that, on the basis of Berniece Balczewski's physical limitations as demonstrated by the medical reports and which limitations were verified by his own

observation, she was not qualified for any industrial employment. He stated that she was not qualified educationally or by experience to perform any type of service in a sustained and reliable manner, and that her condition, together with her age and lack of any more than a rudimentary education, made any training program of no consequence.

He stated, in his opinion, based upon the employment market and upon Berniece Balczewski's physical condition, that she was 100 percent disabled for industrial purposes. He pointed out that she was disqualified even for sedentary jobs, because her condition prevented her from sitting still or focusing her attention for any appreciable length of time. The opinion given by Dr. Wrage that Berniece Balczewski was 100 percent disabled for industrial purposes was not attacked or questioned during the course of cross-examination.

This court, in the case of *Kurschner v. Department of Industry, Labor & Human Relations*, 40 Wis.2d 10, 18, 161 N.W.2d 213, recognized that, where nonschedule industrial injuries were sustained, the crucial factor in establishing permanent total disability was proof of the total and permanent impairment of earning capacity. *Kurschner* was, however, only the culmination of a long line of cases interpreting the basis of compensation for nonschedule injuries under the Wisconsin Workmen's Compensation Act.

In *Northern States Power Co. v. Industrial Comm.*, 252 Wis. 70, 30 N.W.2d 217 (1947), the court traced early decisions under the Workmen's Compensation Act stressing the loss of earning capacity as well as the loss of bodily function. The court in *Northern States Power Co.* noted that, by the 1923 amendments to the Workmen's Compensation Act, the legislature provided that

nonschedule and nonrelative injuries were to be compensable specifically on the basis of comparing the nature of the claimant's injury to an injury which caused permanent total disability. Since the award was made for all time, the court said, "[I]t must be based upon some sort of prediction as to impairment of earning capacity." (at 76) The emphasis in the case of awards for nonschedule injuries was, therefore, on the future ability to earn a living. See also *Wagner v. Industrial Comm.*, 273 Wis. 553, 567b, 79 N.W.2d 264, 80 N.W.2d 456 (1956). The rationale was stated conversely in *Shymanski v. Industrial Comm.*, 274 Wis. 307, 314, 79 N.W.2d 640 (1956):

"No allowance can be made in a compensation award for physical or mental suffering, however acute, which does not interfere with earning capacity."

It is clear that the medical reports submitted to the department and the testimony of Dr. Wrage precisely satisfy the rationale described by Professor Arthur Larson in his treatise, 2 *Workmen's Compensation Law*, sec. 57.51, page 10–107:

"57.51  The 'odd-lot' doctrine
" 'Total disability' in compensation law is not to be interpreted literally as utter and abject helplessness. Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of total disability nor require that it be reduced to partial. The task is to phrase a rule delimiting the amount and character of work a man can be able to do without forfeiting his totally disabled status. The rule followed by most modern courts has been well summarized by Justice Matson of the Minnesota Supreme Court in the following language:
" 'An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.'

"The particular case which elicited this statement furnishes an excellent illustration of the typical combination of facts encountered in this area: Claimant, a streetcar flagman, as a result of being caught between two streetcars, suffered the loss of his left eye, 75 percent loss of use of his left arm, 10 percent loss of use of the right ankle and foot, and severe post-traumatic neurosis. He worked for short periods thereafter as a conductor, as an income tax worker, as a house-to-house canvasser, and as a detective, all with great difficulty and discomfort. The supervisor of placements of the Minnesota state employment service was permitted to testify that gainful jobs with reasonable continuity were not available for a person so handicapped. The Supreme Court, applying the rule quoted above, held that such evidence was admissible, and that the sporadic employment and earnings shown were not inconsistent with this concept of total disability."

This doctrine was characterized as the "odd-lot" doctrine in the English case of *Cardiff Corporation v. Hall,* 1 K.B. 1009, 1020 (1911):

" '[T]here are cases in which the onus of shewing that suitable work can in fact be obtained does fall upon the employer who claims that the incapacity of the workman is only partial. If the accident has left the workman so injured that he is incapable of becoming an ordinary workman of average capacity in any well known branch of the labour market—if in other words the capacities for work left to him fit him only for special uses and do not, so to speak, make his powers of labour a merchantable article in some of the well known lines of the labour market, I think it is incumbent upon the employer to shew that such special employment can in fact be obtained by him. If I might be allowed to use such an undignified phrase, I should say that if the accident leaves the workman's labour in the position of an "odd lot" in the labour market, the employer must shew that a customer can be found who will take it . . . .' " *Larson, supra,* sec. 57.51, pp. 10–119.

This concept was approved for New York State in an opinion written by Judge Benjamin N. Cardozo, *Jordan v. Decorative Co.,* 230 N.Y. 522, 130 N.E. 634 (1921):

"He [the plaintiff] was an unskilled or common laborer. He coupled his request for employment with notice that the labor must be light. The applicant imposing such conditions is quickly put aside for more versatile competitors. Business has little patience with the suitor for ease and favor. He is the 'odd lot' man . . . the 'nondescript in the labor market' . . . . Work, if he gets it, is likely to be casual and intermittent . . . . Rebuff, if suffered, might reasonably be ascribed to the narrow opportunities that await the sick and halt." (at 525–26)

Professor Larson characterizes this doctrine as a rule of evidence. He concludes that, where a claimant makes a *prima facie* case that he has been injured in an industrial accident and, because of his injury, age, education, and capacity, he is unable to secure any continuing and gainful employment, the burden of showing that the claimant is in fact employable and that jobs do exist for the injured claimant shifts to the employer. Larson states:

"A suggested general-purpose principle on burden of proof in this class of cases would run as follows: If the evidence of degree of obvious physical impairment, coupled with other factors such as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant. Certainly in such a case it should not be enough to show that claimant is physically capable of performing light work, and then round out the case for noncompensability by adding a presumption that light work is available. It is a well-known fact of modern economic life that the demand for unskilled and semi-skilled labor has been rapidly declining with the advent of the age of mechanization and automation, and that the great bulk of the persistent hard-core unemployment of the United States is in these categories." *Larson, supra,* sec. 57.61, pp. 10–136–37.

We think it clear that what Larson refers to as the "odd-lot" doctrine is a statement of the Wisconsin law as

it has existed at least since the 1923 amendments to the Workmen's Compensation Act.

The Attorney General, representing the Department of Industry, Labor and Human Relations on this appeal, expressly recognizes that the "odd-lot" doctrine is but another statement of the accepted law in Wisconsin. The Attorney General states in his brief:

"The department and the state wish to make it clear that they do not dispute the validity of the 'odd-lot' doctrine as an evidentiary rule and agree with the claimant that such doctrine is implicit in prior decisions of this court such as *McDonald v. Industrial Comm.* (1917), 165 Wis. 372, 162 N.W. 345; *Milwaukee Western Fuel Co. v. Industrial Comm.* (1944), 245 Wis. 334, 13 N.W.2d 919 and *Transamerica Ins. Co. v. ILHR Department,* supra."

In addition to agreeing that the "odd-lot" doctrine is a part of the Wisconsin workmen's compensation law, the Attorney General further recognizes that the Department of Industry, Labor and Human Relations and its predecessor, the Industrial Commission, have made findings of permanent disability on the basis of the doctrine. He asserts, however, that those cases are inapplicable because, in them, the department or commission and this court affirmed findings of total disability that were, in fact, made by the examiner. The Attorney General distinguishes the instant case by pointing out that the examiner and commission found not total permanent disability, but disability of only 55 percent. He contends that there is abundant evidence to support a finding of 55 percent and he states:

"The question here is not whether there is credible evidence in the record to sustain a finding the department did not make, but whether there is any credible evidence to sustain the finding the department did make."

This undoubtedly is the correct and usual statement of the law, and it has been frequently applied by this court

in the review of workmen's compensation cases. *Unruh v. Industrial Comm.,* 8 Wis.2d 394, 398, 99 N.W.2d 182 (1959). Accordingly, the Attorney General argues that, because there is abundant evidence to show that Berniece Balczewski was disabled at least to the extent of 55 percent and such finding was made by the commission, we are obliged to sustain that finding.

That rationale, in the instant case, begs the question. As is conceded by the Attorney General, both in his brief and in oral argument, the "odd-lot" doctrine is a rule of evidence, and, once the claimant *prima facie* proves 100 percent disability upon the basis of future unemployability, the burden is upon the employer to rebut that *prima facie* showing and to demonstrate "that some kind of suitable work is regularly and continuously available to the claimant." Larson, pp. 10–136–37.

The fact that, after the claimant's *prima facie* proof, the employer put in evidence that the claimant was 55 percent disabled was substantially irrelevant to its burden of showing that work was regularly and continuously available to the claimant. It is true that Dr. Millen, a recognized neurologist, testified on cross-examination that Berniece Balczewski "could work" in a supervisory position and she could tell "new people how to do certain types of work." He conceded, however, that he was not familiar with the Madison job market and that he had nothing to do with placing disabled people in jobs. Rather, he speculated, "I imagine here in Madison the job market in those areas I just mentioned should be pretty good." It is apparent that this testimony in no way sustains the burden of proof which the claimant's *prima facie* case thrust upon the employer. This evidence is speculative. While we stated in *R. T. Madden, Inc. v. Department of Industry, Labor & Human Relations,* 43 Wis.2d 528, 169 N.W.2d 73 (1969), that a finding

made in a workmen's compensation case must be sustained if supported by "any credible evidence," we said:

"The assumption in that test is, of course, that the evidence is relevant, that it is evidentiary in nature and not a conclusion of law, and that it is not so completely discredited by other evidence that a court could find it incredible as a matter of law." (at 547)

Dr. Millen's estimate of disability in the neighborhood of 50 percent was irrelevant in light of the test set forth in Larson, because it had nothing to do with the specific ability of Berniece Balczewski to obtain stable employment. To the extent that it had any relevancy, it was apparent from Dr. Millen's own statement that he was a medical expert and not an expert in the job market, as was Dr. Wrage; and he conceded that his opinion was wholly speculative. His testimony does not purport to rebut, and in law does not rebut, claimant's *prima facie* case. The proof of the employer fails to meet the burden of disproving claimant's *prima facie* case that claimant is totally unemployable as that term is defined under the "odd-lot" doctrine and Wisconsin law.

Under this state of the record, we could perhaps conclude that the employer has had the opportunity to assume its burden of proof of demonstrating that Berniece Balczewski could obtain regular and stable employment despite her industrial injuries and her inherent handicaps in the job market, and having failed to do so, should not be given a second opportunity to assume its burden of proof. We conclude that, although the "odd-lot" doctrine discussed above is, as acknowledged by the Attorney General, a part of the Wisconsin law, it was not recognized or perceived by the employer or the examiner at the time of hearing, nor was it recognized by the department on review. Accordingly, we reverse the judgment of the circuit court with directions to remand to the Department of Industry, Labor and Human Relations

for the purpose of further hearing. At that hearing, the employer has the burden of going forward with the evidence to demonstrate that Berniece Balczewski is not unemployable under the test set forth herein. Mere speculative testimony as to employment opportunities will not suffice to satisfy the employer's burden of proof. We also direct that the claimant shall have the opportunity to supplement its *prima facie* case in the event she considers it desirable or appropriate.

*By the Court.*—Judgment reversed and cause remanded to the circuit court, with directions to remand to the Department of Industry, Labor and Human Relations for further proceedings consistent with this opinion.

ABRAHAMSON, J., took no part.