PFISTER & VOGEL TANNING COMPANY, INC., and another, Plaintiffs-Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Defendants-Respondents.

Supreme Court

No. 76–195. Submitted on briefs October 4, 1978.—
Decided January 9, 1979.
(Also reported in 273 N.W.2d 293.)

For the appellants the cause was submitted on the brief of *Clayton R. Hahn* and *Borgelt, Powell, Peterson & Frauen, S.C.,* of Milwaukee.

For the Department of Industry, Labor and Human Relations the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Gordon Samuelsen,* assistant attorney general.

SHIRLEY S. ABRAHAMSON, J.   On March 5, 1971, Robert Timberlake, an employee of Pfister & Vogel Tanning Company, Inc., injured his back while rolling a four-hundred-pound barrel from one pallet to another. The circuit court entered judgment confirming the findings and order of the Department of Industry, Labor & Human Relations which had affirmed an examiner's finding that the injury caused 20 percent permanent partial disability. The employer and the insurance company appeal from that judgment. We reverse the judgment.

At a hearing before an examiner, Timberlake testified that he was an employee of Pfister, that he injured his back on March 5, 1971, while rolling a four-hundred-pound barrel; that he did not work for several weeks,

that he returned to work from April 5 through May 10, 1971 and that he has not worked since. He further testified that he was forty years old, had attended school through the third grade, had had no special training of any kind, and had done heavy laboring work during his entire employment record. Timberlake testified that his back, neck and right leg hurt. He could not lift or work. The medical reports of Dr. Harry B. Sadoff estimated Timberlake's permanent partial disability to be five (5) percent partial permanent disability to the body as a whole. Dr. David J. Ansfield opined that "an allowance of five percent permanent disability of the body as compared to total disability would be fair and equitable." The report of Dr. Zebedee J. Nevels estimated Timberlake's permanent partial disability to be five percent to the back. Dr. Philip Shovers reported the permanent partial disability at approximately 15 percent of the total body. Drs. Sadoff, Nevels and Shovers reported that the injury aggravated a pre-existing condition and that as a result of the aggravation Timberlake was unable to perform heavy manual labor. Dr. Ansfield's report also stated that Timberlake is unsuited for heavy work but attributed the unsuitability to a pre-existent back pathology, not to the 1971 incident.

The hearing examiner found "that the injury caused temporary total disability . . . [and] also caused Timberlake 20 percent permanent total disability." The hearing examiner's Findings of Fact and Interlocutory Order did not indicate upon which medical reports this finding was based and what further evidence, if any, was reflected in the finding. The Department affirmed the hearing examiner's findings and order, and the trial court in turn affirmed the order of the Department.

The employer contends that the Department's finding that Timberlake sustained 20 percent permanent partial disability is not supported by any credible evidence.[1]

The trial court affirmed the Department's finding as supported by credible evidence on the basis of *Polzin v. Industrial Commission*, 4 Wis.2d 600, 91 N.W.2d 109 (1958), which it interpreted as authorizing a five percent leeway in determining disability. In *Polzin* medical testimony regarding the effect of the injury was sharply divided. One physician testified that the injury caused Polzin a ninety (90) percent permanent disability. Two other physicians testified that he had suffered only a five (5) percent permanent disability and that the appearance of greater disability resulted from malingering. The Industrial Commission affirmed the examiners' finding of ten (10) percent permanent disability. This court said in *Polzin*:

". . . It is clear that the commission was convinced there was malingering and its finding based on that belief is supported by the testimony of Drs. Nellen and Burns. True, the commission fixed the disability at

---

[1] This court "has consistently held that in reviewing findings of the Department of ILHR, the test is whether there is any credible evidence in the record sufficient to support the findings made by the Department." *Consolidated Papers Inc. v. ILHR Dept.*, 76 Wis.2d 210, 213, 251 N.W.2d 69 (1977). "The 'any credible evidence' test has been applied to workers' compensation cases for several years. As such it becomes part of the statute by interpretation." *Kohler Co. v. ILHR Dept.*, 81 Wis.2d 11, 24, 259 N.W.2d 695 (1977).

"The question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make." *Unruh v. Industrial Comm'n*, 8 Wis.2d 394, 398, 99 N.W.2d 182 (1959) quoted with approval in *Balczewski v. ILHR Dept.*, 76 Wis.2d 487, 497, 251 N.W.2d 794 (1977). *See* Comment, *Judicial Review of Workman's Compensation Cases*, 1973 Wis. L. Rev. 576.

a slightly higher percentage than did the doctors, but the five percent variance does not render the finding speculative." 4 Wis.2d at 605.

Relying upon this statement, the trial court in the present case reasoned:

"*Polzin* apparently gives the Department 5 percent leeway in determining a claimant's disability. In this case, the Department chose to reject the opinions of Drs. Ansfield, Nevels and Sadoff, and accept the opinion of Dr. Shovers, which was within its power to do. . . . Since the 20 percent figure adopted by the Department was within 5 percent of Dr. Shovers' disability estimate of 15 percent, the 20 percent figure is supported by credible evidence in the record."

We do not interpret *Polzin* as authorizing the department to make an award within a five percent range of the estimates given by the doctors.

In *Polzin* the Department's award was upheld on the basis of the posture of that case on appeal. The employee had appealed the award claiming the finding of 10 percent was speculative; the employee hoped to reverse the finding and get an increased award. Sec. 102.23(2), Stats., provides that upon the trial of any action against the Department for review of a workers' compensation order or award "the court shall disregard any irregularity or error of the department unless it be made to affirmatively appear that the plaintiff was damaged thereby." In *Polzin* this court held that Polzin was not damaged by the finding of 10 percent disability. The Department had obviously rejected the 90 percent testimony, and the Department's granting Polzin an extra five percent disability award did not damage him. The *Polzin* decision does not rest on a rule allowing a five percent variance between the Department's finding of a claimant's disability and the underlying testimony regarding the claimant's disability. Insofar as *Polzin*

may be interpreted to allow a "five percent leeway rule," we disavow that interpretation.

We must now determine whether there is credible evidence to support the Department's finding of 20 percent disability in the case at bar. Timberlake argues that the five percent variance between the 15 percent disability reported by Dr. Shovers and the 20 percent disability found by the Department is justified by non-medical circumstances such as Timberlake's education, training and race. Timberlake is correct in asserting that the effect of his injury on his wage earning capacity should have been considered.

Determinations as to permanent partial disability fall into two classes: schedule injuries and non-schedule injuries. Secs. 102.52 to 102.55, Stats., set forth a schedule of injuries and a procedure for computing those injuries into an ultimate award. Non-schedule injuries which cause permanent disability are governed by sec. 102.44(2) and (3), Stats.:

"(2) In case of permanent total disability aggregate indemnity shall be weekly indemnity for the period that he may live. Total impairment for industrial use of both eyes, or the loss of both arms at or near the shoulder, or of both legs at or near the hip, or of one arm at the shoulder and one leg at the hip, shall constitute permanent total disability. This enumeration shall not be exclusive but in other cases the department shall find the facts.

"(3) For permanent partial disability not covered by ss. 102.52 to 102.56 the aggregate number of weeks of indemnity shall bear such relation to the number of weeks set out in pars. (a) and (b) as the nature of the injury bears to one causing permanent total disability and shall be payable at the rate of two-thirds of the average weekly earnings of the employe, the earnings to be computed as provided in s. 102.11. Such weekly indemnity shall be in addition to compensation for the healing period and shall be for the period that the employe may live, not to exceed:

"(a) One thousand weeks for all persons 52 years of age or less.

"(b) For each successive yearly age group, beginning with 53 years, the maximum limitation shall be reduced by 2½% per year, with no reduction in excess of 50%."

We have said that as to non-schedule injuries "any award for permanent partial disability must be based upon some kind of a prediction as to the impairment of earning capacity." *Butler v. ILHR Dept.*, 57 Wis.2d 190, 194, 203 N.W.2d 687 (1973). *See also Kohler Co. v. ILHR Dept.*, 42 Wis.2d 396, 405, 167 N.W.2d 431 (1969); *Mednicoff v. ILHR Dept.*, 54 Wis.2d 7, 10–16, 194 N.W.2d 670 (1972).

In *Kurschner v. ILHR Department*, 40 Wis.2d 10, 161 N.W.2d 213 (1968), this court concluded that the Industrial Commission's finding of 15 percent permanent partial disability based solely on impairment of bodily function without regard to impairment of earning capacity was error. 40 Wis.2d at 14–16. Sec. 102.44(2) and (3) must be applied carefully if they are not to lead to a confusion between functional or medical impairment on the one hand and impairment with regard to earning capacity on the other. It is the latter impairment that the section is intended to measure. We explained the comparison required by the statute as follows:

"Thus it appears that the injuries of an applicant (non-schedule but permanent total or partial) are to be compared medically with injuries that would render a person permanently totally disabled for industrial purposes as provided in sec. 102.44(2), Stats., and *not* to injuries that would totally disable a person functionally without regard to loss of earning capacity." (Emphasis in original.) *Kurschner v. ILHR Dept.*, 40 Wis.2d at 18.[2]

---

[2] Quoted with approval in *Kohler Co. v. ILHR Dept.*, 42 Wis.2d 396, 406, 167 N.W.2d 431 (1969).

In *Kurschner* we held that the Industrial Commission erred in adopting the finding of the examiner who determined permanent partial disability by comparing the employee's injuries to those of a hypothetical person totally disabled functionally and not to one totally disabled as to loss of earning capacity. Workers' compensation disability is not the same as functional disability. In a number of cases we have said that a finding of permanent partial disability by the Industrial Commission must be based on a consideration of both factors—loss of bodily function and loss of earning capacity. Consideration of both factors is necessary to implement the objective of the Worker's Compensation Act, namely "to compensate in some measure injured workmen for *loss of wage-earning power* sustained in the industry . . . ." *Schaefer & Co. v. Industrial Comm'n,* 220 Wis. 289, 293, 265 N.W. 390 (1936), quoted in *Kohler Co. v. ILHR Dept.,* 42 Wis.2d at 408.

The trial court expressed concern that the Department had not considered the effect of Timberlake's injury upon his wage-earning capacity. The decision of the trial court concluded with this observation:

"It should be pointed out that neither the examiner nor the department made any finding concerning the economic loss of earning capacity, if any, suffered by claimant [Timberlake] due to his permanent partial disability. Claimant has not faulted this omission in the findings, and therefore we need not consider that issue on this review. Any order of remand would necessarily require that the department address itself to that issue."

The trial court's observation is highly pertinent. On review of the record we conclude that the Department and examiner erred in not considering the impairment of the earning capacity of Timberlake.

Even if we were to assume that the finding of 20 percent permanent partial disability in the case at

bar is based on a consideration of both factors, *i.e.*, loss of bodily function and loss of earning capacity, we must agree with the employer that there is no credible evidence to support a finding of 20 percent permanent partial disability.

The examiner had before him WC–16b forms filed by Drs. Nevels, Sadoff, and Shovers, as well as written reports from Drs. Ansfield, Sadoff and Shovers. No physician testified at the hearing. Question 13 on Form WC–16b requested an estimate of the percentage of the disability incurred by Timberlake, but that request was clearly for a percentage of total functional or medical impairment. All four physicians indicated that Timberlake could do some light work. This testimony is competent under sec. 102.44 (3), Stats., with respect to Timberlake's functional disability; it is not sufficient to show Timberlake's ability to find employment doing light work. Nor is the finding of 20 percent partial permanent disability supported by other evidence in the record.

In *Kurschner* we explained what evidence is necessary to support a finding of permanent partial disability. *Kurschner* is dispositive of the instant case. As we said there,

". . . It is not enough under that statute that medical experts make general statements about the ability of appellant to earn a living. Testimony must be offered that will permit a comparison between [the employee's] injury and an injury that would cause permanent total disability for industrial use. Such evidence was not presented to the examiner nor is there other evidence from which such a comparison can be inferred.

"The case should be remanded to the industrial commission for a determination on the proper basis, of the extent of any permanent disability. An opportunity should be provided for the introduction of such new evidence as each party may deem appropriate." *Kurschner v. ILHR Dept.,* 40 Wis.2d at 19, 20.

*By the Court.*—Judgment reversed and cause remanded with instructions to remand to the Department of Industry, Labor & Human Relations for further proceedings consistent with this opinion.