Ralph E. Beecher, Plaintiff-Appellant,

v.

Labor & Industry Review Commission, Outokumpu Copper Kenosha, Inc. and Fremont Indemnity Co., Insurer, c/o Casualty Insurance, Defendants-Respondents.†

Court of Appeals

*No. 02–1582. Oral argument February 12, 2003.—Decided April 16, 2003.*

2003 WI App 100

(Also reported in 663 N.W.2d 316.)

† Petitions to review granted 10-1-03.

On behalf of the plaintiff-appellant, there were briefs and oral argument by *Daniel J. Kelley* of *Schoone, Leuck, Kelley, Pitts & Knurr, S.C.*, Racine.

On behalf of the defendant-respondent Labor & Industry Review Commission, there was a brief by *Stephen M. Sobota*, assistant attorney general, and

*James E. Doyle*, attorney general. There was oral argument by *Stephen M. Sobota*, assistant attorney general.

On behalf of the defendants-respondents Outokumpu Copper Kenosha, Inc. and Fremont Indemnity Co., Insurer, c/o Casualty Insurance, there was a brief by *Scott E. Wade* and *Jessica M. Vianes* of *Peterson, Johnson & Murray, S.C.*, Milwaukee. There was oral argument by *Scott E. Wade*.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. SNYDER, J. Ralph E. Beecher appeals from an order dismissing his appeal of a Labor & Industry Review Commission (LIRC) worker's compensation decision finding that he had not established a prima facie case for permanent total disability; LIRC instead ruled that Beecher was permanently partially disabled. Beecher argues that there is no substantial and credible evidence to support LIRC's conclusion that he failed to establish a prima facie case of permanent total disability. We agree with Beecher and reverse the order of the circuit court.

## FACTS[1]

¶ 2. Beecher was born in July 1942 and has a ninth grade education. Beecher had worked for Outokumpu Copper Kenosha, Inc., a foundry, for twenty-

---

[1] While Beecher's factual discussion does provide citations to documents in the record, he does not utilize the numerical references provided in the circuit court's compilation of the record. The State takes issue with many of Beecher's facts and

nine years in what he has characterized as strenuous employment. As of April 7, 1997, Beecher had been working for several months on a "Z-mill" machine. The Z-mill ran sheets of metal from one large roll of metal to another roll or spool. The job required Beecher to lean over the first roll of metal to pick up the sheet of metal as it wound off the first roll, then thread the sheet of metal into a slit on the second roll. Beecher would wind the sheet of metal from the first roll to the second, then thread the metal sheeting into the Z-mill machine and rewind it. The metal sheets themselves were five to eight inches wide and approximately two inches thick; an entire roll might weigh 15,000 pounds. The job required bending over to pick up the sheets of metal and then pulling them to thread sheets onto the rolls.

¶ 3. Beecher developed sharp pains in his lower back, leading him to seek medical treatment with an orthopedist, Dr. Christopher Noonan, in April 1997. The pain increased over time until Beecher could no longer work. On September 10, 1997, Dr. Noonan performed a third surgical procedure to Beecher's lower back, a discectomy, fusion and graft. A fourth surgery has been suggested to help alleviate his condition but Beecher has not yet opted to have this procedure.

does provide its own factual recitation; however, citations to the record using the numerical references provided in the record are minimal. Such failure is a violation of WIS. STAT. RULE 809.19(1)(d) and (3) of the rules of appellate procedure, which requires parties to set out facts "relevant to the issues presented for review, with appropriate references *to the record.*" (Emphasis added.) An appellate court is improperly burdened where briefs fail to consistently and accurately cite to the record. *Meyer v. Fronimades*, 2 Wis. 2d 89, 93–94, 86 N.W.2d 25 (1957).

¶ 4. Beecher returned to light-duty work in April 1998, at which time he worked for two weeks until Outokumpu apparently ran out of light-duty assignments for him. Since then, Beecher has not returned to work for Outokumpu. Outokumpu has since moved its operations out of Wisconsin and did not offer to relocate Beecher to a light-duty job at its new location. Beecher testified that if he had been offered such a transfer, he would have accepted it.

¶ 5. In September 1999, Beecher filed an application for a hearing, alleging that his day-to-day work activities up to April 7, 1997, caused progression of his pre-existing back condition, ultimately leading to lumbar fusion surgery. Beecher sought temporary total disability benefits from October 14, 1998, through May 14, 1999, permanent partial disability benefits on a functional basis at fifteen percent to the body as a whole, and permanent disability on a vocational basis for loss of earning capacity, including permanent total disability and payment of medical expenses.

¶ 6. On January 3, 2001, a hearing was held before an administrative law judge (ALJ) for the Worker's Compensation Division of the Department of Workforce Development. Prior to the hearing, Outokumpu and its insurer, Fremont Indemnity Co., conceded jurisdictional facts and an average weekly wage at the statutory maximum. In dispute before the ALJ was whether Beecher sustained injuries arising out of his employment while performing services incidental to or growing out of that employment and, if so, the nature and extent of the disability and related medical expenses. In addition, both parties had entered into a limited compromise agreement concerning certain issues.

¶ 7. On April 5, 2001, the ALJ issued his findings of fact and order finding a compensable injury and awarded compensation for temporary total disability from October 14, 1998, to May 19, 1999, and for permanent total disability thereafter. The ALJ also awarded payment of certain medical expenses. Outokumpu filed a timely petition for LIRC review. LIRC partially reversed the decision of the ALJ; LIRC found that Beecher had sustained a disability from an occupational disease arising out of his employment with Outokumpu. However, LIRC also found that Beecher had not established a prima facie case for permanent total disability but instead ruled Beecher was permanently partially disabled.

¶ 8. Beecher filed an appeal pursuant to WIS. STAT. § 102.23 (2001–02)[2] seeking review of LIRC's decision. The circuit court affirmed LIRC's decision and Beecher appeals.

## DISCUSSION

■

¶ 9. In an appeal following an administrative agency decision, we review the decision of the agency, not that of the circuit court. *Am. Mfrs. Mut. Ins. Co. v. Hernandez*, 2002 WI App 76, ¶ 11, 252 Wis. 2d 155, 642 N.W.2d 584. We do not weigh the evidence or pass upon the credibility of the witnesses and we must uphold LIRC's findings of fact on appeal if they are supported by credible and substantial evidence in the record. *Id.* When we review an administrative agency's interpretation of a statute, there are three possible levels of deference: great weight, due weight or de novo. *Id.*

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 10. When we afford "great weight" deference to the agency's interpretation, we will sustain a reasonable agency conclusion even if an alternative conclusion is more reasonable. *Id.* at ¶ 12. We give "great weight" deference to the agency's interpretation when all of the following conditions are met: (1) the agency was charged by the legislature with the duty of administering the statute, (2) the interpretation of the agency is one of long-standing, (3) the agency employed its expertise or specialized knowledge in forming the interpretation, and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Id.*

¶ 11. In affording "due weight" deference to the agency's interpretation, we will not overturn a reasonable agency decision that comports with the purpose of the statute unless we determine that there is a more reasonable interpretation available. *Id.* at ¶ 13. We afford "due weight" deference to the agency's determination when it has some experience in an area but has not developed the expertise that necessarily places it in a better position than a court to make judgments regarding the interpretation of the statute. *Id.*

¶ 12. When we review an agency decision "de novo," we give no deference to the agency's interpretation. *Id.* at ¶ 14. De novo review is appropriate if any of the following is true: (1) the issue before the agency is clearly one of first impression, (2) a legal question is presented and there is no evidence of any special agency expertise or experience or (3) the agency's position on an issue has been so inconsistent that it provides no real guidance. *Id.*

¶ 13. Here, we accord LIRC's decision great weight deference and thus will sustain a reasonable agency conclusion even if an alternative conclusion is more reasonable. *See id.* at ¶ 12.

¶ 14. Upon briefs, Beecher argues that there is no substantial and credible evidence that he failed to establish a prima facie claim of permanent total disability pursuant to *Balczewski v. DILHR*, 76 Wis. 2d 487, 251 N.W.2d 794 (1977). Beecher contends that his evidence established a prima facie claim of permanent total disability and LIRC's reasoning does not support its contrary conclusion. Beecher relies primarily on *Balczewski*, which he claims requires him to establish a prima facie case of permanent total disability, and concludes that since the facts of the case at hand are nearly identical to the facts of *Balczewski*, an identical result is compelled.

¶ 15. Outokumpu argues that LIRC's findings of fact support its legal conclusion. LIRC maintains that there was credible and substantial evidence to support its findings on the nature and extent of Beecher's disability; LIRC appears to acknowledge *Balczewski's* requirement that the claimant establish a prima facie case of permanent total disability but attempts to distinguish the facts of *Balczewski* from the case at hand.

¶ 16. However, in its brief, LIRC also implicitly argues that 4 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKER'S COMPENSATION LAW § 84.01[4] (1st ed. 2001), elaborates on the *Balczewski* principles and is equally applicable to Beecher. In addition to *Balczewski's* requirement that the claimant establish a prima facie case of permanent total disability, LIRC cites to LARSON for the concept that "it is not unreasonable to place the burden of proof on [the] claimant to establish unavail-

ability of work to a person in his or her circumstances . . . [which] would normally require a showing that the claimant has made reasonable efforts to secure suitable employment." In essence, LIRC argues that the burden was on Beecher to (1) establish a prima facie case for permanent total disability (*Balczewski*) and then (2) show he made reasonable efforts to obtain suitable employment (LARSON). LIRC acknowledges in its brief that it applied both the *Balczewski* and LARSON principles to Beecher and argues that *Balczewski* implicitly adopts the above LARSON principle, as have numerous cases from other jurisdictions.[3]

¶ 17. After briefing, we ordered oral argument. At oral argument, LIRC clarified its contention; LIRC again admitted that it had adopted and applied the LARSON principle to Beecher and urged us to adopt this second LARSON step as law. Thus, by its own admission, LIRC applied a standard to Beecher that is not currently the law in Wisconsin. This was erroneous.

¶ 18. The principles set forth in LARSON, as cited by LIRC for the second step Beecher must take, are not the law in Wisconsin; *Balczewski* is the law and *Balczewski* does not require a claimant to make a showing

---

[3] LIRC's authority for this proposition includes *Hainey v. Protein Blenders, Inc.*, 445 N.W.2d 398 (Iowa Ct. App. 1989); *Dehlbom v. Industrial Special Indemnity Fund*, 930 P.2d 1021 (Idaho 1997); *Jacobsky v. C. D'Alfonso & Sons, Inc.*, 358 A.2d 511 (Me. 1976); *Redgate v. Sroga's Standard Service*, 421 N.W.2d 729 (Minn. 1988); and a dissent in *Schepanovich v. U.S. Steel Corp.*, 669 P.2d 522 (Wyo. 1983). While we generally agree with LIRC's assertion that we may consider other jurisdictions' practices and reasoning for assistance, these cases are in no way binding precedent and we see no need to examine other jurisdictions when Wisconsin case law is clear.

that he or she had made reasonable efforts to secure suitable employment. In fact, *Balczewski* establishes the opposite.

¶ 19. *Balczewski* held that "where nonschedule industrial injuries were sustained, the crucial factor in establishing permanent total disability [is] proof of the total and permanent impairment of earning capacity." *Balczewski*, 76 Wis. 2d at 492. Citing to LARSON, the *Balczewski* court states that "where a claimant makes a *prima facie* case that he has been injured in an industrial accident and, because of his injury, age, education, and capacity, he is unable to secure any continuing and gainful employment, the burden of showing that the claimant is in fact employable and that jobs do exist for the injured claimant *shifts to the employer.*" *Balczewski*, 76 Wis. 2d at 495 (emphasis added). *Balczewski*'s holding is clear:

> A suggested general-purpose principle on burden of proof in this class of cases would run as follows: If the evidence of degree of obvious physical impairment, coupled with other factors such as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant. Certainly in such a case it should not be enough to show that claimant is physically capable of performing light work, and then round out the case for noncompensability by adding a presumption that light work is available.

*Id.* (citing LARSON, *supra*, § 57.61).

¶ 20. In essence, establishing permanent total disability is a two-step process. The first step requires the claimant to make a prima facie case that he or she

is permanently and totally disabled. *Balczewski*, 76 Wis. 2d at 494–95, 497. The second step, and the burden, then shifts to the employer to rebut that prima facie showing and demonstrate that some kind of suitable work is regularly and continuously available to the claimant. *Id.* at 497. Step one belongs to the claimant while step two belongs to the employer.

¶ 21. LIRC, however, parses *Balczewski* somewhat differently. LIRC's position is this: When the claimant is "obviously unemployable" as was the case in *Balczewski*, then, once the claimant puts in his or her prima facie case, the burden shifts to the employer to prove that jobs exist for the claimant, even with the limitations placed by the treating physician. However, where there is some legitimate question about whether the claimant is "obviously unemployable," then the burden should be on the claimant to prove that he or she has conducted a job search and has been unable to find a job with the physical limitations the doctor has ordered. In LIRC's view, *Balczewski* was a case involving an "obviously unemployable" person and this case is not. Thus, *Balczewski* is not controlling here.

¶ 22. Still, LIRC believes that *Balczewski* is nonetheless important to the holding in this case for the following reason: the *Balczewski* court relied on the LARSON treatise in support of its decision. LARSON, in LIRC's view, suggests that in cases involving an "obviously unemployable" person, the burden is on the employer and in cases where it is not so obvious, the burden is on the claimant. LIRC reasons that the supreme court was merely following this paradigm in *Balczewski* but did not delineate a difference between "obviously unemployable" situations and those that are not obvious, for the simple reason that it did not have to do so. LIRC posits that this case presents that oppor-

tunity and that discussion of the burden in "not so obvious" cases is a natural corollary to *Balczewski*.

¶ 23. LIRC arrives at its theory of what LARSON says by reference to the following paragraph in LARSON:

> The corollary of the general-purpose principle just stated would be this: If the claimant's medical impairment is so limited or specialized in nature that he or she is not obviously unemployable or relegated to the odd-lot category, it is not unreasonable to place the burden of proof on that claimant to establish unavailability of work to a person in his or her circumstances. This normally would require a showing that the claimant has made reasonable efforts to secure suitable employment. The effort to seek employment will not be deemed reasonable if the claimant places undue limitations on the kind of work he or she will accept, including limitations not justified by the character of the impairment.

LARSON, *supra,* § 84.01[4]. There are several problems with LIRC's analysis. First, the supreme court in *Balczewski* never used the term "obviously unemployable" to refer to Balczewski. Second, the supreme court never even hinted that there was an exception to its holding that placed the burden on the employer to show the availability of jobs after a prima facie case had been made by the claimant that he or she was "odd lot." Third, the section in LARSON referred to by LIRC is entitled "Burden of Proof of Work Search on Employee in Non-odd-lot Cases." The text of the section point blank tells us that there are those cases where the claimant's "medical impairment is *so limited* or *specialized in nature* that he or she is not obviously unemployable or relegated to the odd-lot category." LARSON, *supra,* § 84.01[4]. LIRC does not tell us how Beecher's physical problems are "so limited" or "specialized" as to take his

case out of odd-lot status. We wonder whether the section in LARSON is even applicable to Beecher's case.

¶ 24. *Balczewski* instructs that when the claimant produces evidence that he or she is relegated to odd-lot status and makes a prima facie case, the burden shifts. The section of LARSON cited by *Balczewski* states:

> If the evidence of degree of obvious physical impairment, coupled with other factors such as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant. Certainly in such a case it should not be enough to show that claimant is physically capable of performing light work, and then round out the case for noncompensability by adding a presumption that light work is available.

*Balczewski*, 76 Wis. 2d at 495 (citing LARSON, *supra*, § 57.61).

¶ 25. *Balczewski* pointedly fails to reference the section of LARSON that LIRC urges us to adopt. *Balczewski*'s reference to one small section of the LARSON treatise does not somehow incorporate other sections of LARSON nor does it muddy or blur *Balczewski*'s holding. Nowhere in *Balczewski* does it indicate that the claimant must show that he or she made reasonable efforts to secure employment. In fact, it holds the exact opposite: "[I]t is incumbent upon the employer" to show that such special employment can be obtained. *Balczewski*, 76 Wis. 2d at 494 (citation omitted).

¶ 26. LIRC, however, erroneously imposed both steps on Beecher, concluding that in order to meet his burden, Beecher had to both establish a prima facie case that he was permanently and totally disabled and

show that he made reasonable efforts to secure employment. LIRC then erroneously concluded that because Beecher failed to show reasonable efforts to secure employment, he did not make his prima facie case. We conclude that once the requirements of the second step are properly removed from Beecher and assigned to his employer, as *Balczewski* requires, Beecher's evidence sufficiently establishes a prima facie case that he is permanently and totally disabled. As noted in *Balczewski*:

> "Total disability" . . . is not to be interpreted literally as utter and abject helplessness. Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of total disability nor require that it be reduced to partial. The task is to phrase a rule delimiting the amount and character of work a man can be able to do without forfeiting his total disability status.

*Id.* at 493 (citation omitted).

¶ 27. At the hearing before the ALJ, Beecher presented the following evidence: the three reports of his treating orthopedist, Dr. Noonan, dated September 22, 1998, April 10, 1999 and December 14, 2000; the April 27, 1998 report of Dr. Richard K. Karr, who examined Beecher in April 1998 and July 1998; and the December 13, 2000 report of vocational expert Charles McReynolds, who based his report upon the results of a November 2000 functional capacity evaluation (FCE) conducted by occupational therapist Ruth Meehan.

¶ 28. Outokumpu's evidence included an August 14, 2000 and a December 2000 report from vocational expert Leanne Panizich, who also considered the results of the November 2000 FCE, and three reports from Dr. Thomas O'Brien, dated July 12, 1997, September 24, 1998 and May 14, 1999.

¶ 29. LIRC found the opinions of Drs. Noonan and Karr, Beecher's experts, more credible and discredited the opinion and work restrictions of Dr. O'Brien. LIRC found most credible and adopted the work restrictions of the November 2000 FCE, which were as follows:

standing for up to an hour at a time for a total of four hours per day

sitting for up to an hour at a time up to four hours per day

completing up to three flights of stairs on an occasional basis throughout the course of an average workday

limit bilateral carrying not to exceed a maximum of 15 pounds on an occasional basis

limit bilateral lifting to a maximum of 20 pounds over the course of an average workday

limit left arm carrying to 15 pounds and right arm carrying to 20 pounds over an average workday

limit pushing and pulling to 14 horizontal force pounds occasionally

LIRC found Beecher's complaints credible and further found that he did not invent symptoms or exaggerate his condition.

¶ 30. LIRC rejected the opinion of McReynolds, Beecher's vocational expert, only because McReynolds relied on Dr. Noonan's part-time work restrictions issued in March 1998. These restrictions were as follows: lifting a maximum of 10 pounds; sitting, standing and walking for a maximum of four hours; occasional bending, stooping, crawling or kneeling; and working a maximum of four hours for two weeks, then increase to

six hours maximum. LIRC also concluded that Dr. Noonan did not explicitly reiterate these restrictions when he adopted the November 2000 FCE. While Dr. Noonan did not adopt his previous restrictions, he did in fact adopt the work restrictions of the FCE, which are consistent with his previous restrictions. Nowhere in the FCE does it explicitly state that Beecher can work full time. In addition, McReynolds stated that, based upon the restrictions set forth in the November 2000 FCE, Beecher was permanently and totally disabled. Beecher presented sufficient evidence of a prima facie case of permanent total disability.

¶ 31. The facts here are nearly identical to the facts of *Balczewski*. In *Balczewski*, the claimant was a fifty-seven-year-old unskilled worker whose formal schooling was completed in seventh grade. *Id.* at 490. Her previous work history was entirely unskilled labor and at the time of her injury, her employment involved much heavy lifting. *Id.* After her injury, the claimant was permanently unable to resume that work. *Id.* at 490–91.

¶ 32. The claimant had surgery which did not restore her to pre-accident physical condition. *Id.* at 491. Her injury left her unable to vacuum, sweep or mop, and unable to hold objects, such as a book, for more than five minutes. *Id.* Even limited activities were interrupted by rest periods and her constant pain required medication. *Id.*

¶ 33. At the hearing, an employment placement expert testified that on the basis of the claimant's physical limitations, the claimant was not qualified for any more industrial work and she was not qualified in her education or experience to perform any type of service in a sustained or reliable manner; the claimant's condition, along with her age and lack of education,

411

made any training program inconsequential. *Id.* at 492. Thus, the claimant was 100% disabled for industrial purposes and was disqualified for even sedentary jobs. *Id.* We concluded that prima facie proof of total disability was adduced at the hearing. *Id.* at 490.

¶ 34. Beecher was born in July 1942 and has a ninth grade education. He worked for Outokumpu for twenty-nine years in strenuous employment. Beecher developed sharp pains in his lower back, leading him to seek medical treatment in April 1997. The pain increased over time until Beecher could no longer work. On September 10, 1997, Dr. Noonan performed a third surgical procedure to Beecher's lower back, a discectomy, fusion and graft.

¶ 35. McReynolds, a vocational expert, concluded that based upon Beecher's limited education, poor academic achievement and failed efforts to obtain a GED, he was not a candidate for retraining and based upon Dr. Noonan's work restrictions, Beecher was permanently and totally disabled. Because the facts here are nearly indistinguishable from the facts of *Balczewski*, an identical result is compelled.

## CONCLUSION

¶ 36. By holding that Beecher failed to establish a prima facie case because he "could have made more of an effort" to find work, LIRC subjected Beecher to a standard that is not the law in Wisconsin. Once that constraint is removed, we conclude that prima facie proof of total disability was adduced at the hearing. Because Beecher met his burden, Outokumpu must be given an opportunity to rebut this evidence by showing that some kind of suitable work is regularly and continuously available to Beecher. We therefore reverse

412

and remand this matter for the purpose of permitting Outokumpu to present evidence, if any it has, in rebuttal of Beecher's prima facie case.

*By the Court.*—Order reversed and cause remanded.