STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles L. CHEW, Defendant-Appellant.†

Court of Appeals

*No. 2013AP2592. Submitted on briefs June 26, 2014.
—Decided October 1, 2014.*

2014 WI App 116

(Also reported in 856 N.W.2d 541.)

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Katie R. York*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey J. Kassel*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. NEUBAUER, P.J. This case is about Wisconsin's new "castle doctrine" statute, WIS. STAT. § 939.48(1m) (2011-12).[1] The new law generally provides that use of force is presumably justified when a

---

[1] All references to the Wisconsin Statutes are to the 2011-12 version unless otherwise noted.

person is defending himself or herself against an unlawful and forcible intruder in that person's home. Charles Chew was tried for recklessly endangering safety, use of a dangerous weapon, based on shots he fired at two men from the front door of his apartment complex as they were fleeing through a parking lot. Chew challenges the trial court's decision not to give an instruction under the "castle doctrine" statute. We conclude that Chew was not entitled to an instruction under the statute because the men fleeing from Chew's apartment building through a parking lot were not in Chew's dwelling. We affirm.

## FACTS

¶ 2. Chew lived with his girlfriend, Cheryl McCranie, at her apartment. McCranie later moved out and moved into her parents' home, where she lived with boyfriend Andrew Lee. Early one morning, McCranie decided to go back to the apartment to get some clothes for her and her son. Lee and another friend, Andreaius Lucas, went with McCranie to the apartment complex. While McCranie went into the apartment, Lee and Lucas first waited in the car, but ultimately went to the apartment door and heard arguing inside. There is conflicting testimony regarding whether they had permission to enter the apartment, but it is undisputed that they did enter and proceeded to attack Chew. While the men were beating him, Chew fired on them with a gun, hitting each man in the leg. The men fled the apartment and ran out into the parking lot, toward the garage.[2] Chew followed them out of the apartment and fired more shots at them, from "the doorway of the

---

[2] Chew's apartment building is next to the Rangeline Inn. Based on our review of an aerial view of the buildings that is in the record, we see that a large parking lot extends between the

371

building complex, the hallway." McCranie testified that she saw Chew "holding the gun and continue firing outside." Chew's shots missed Lee and Lucas, but two bullets struck the neighboring inn about 150 feet away from the apartment building's doorway and one struck a nearby car. Lucas and Lee were charged with substantial battery, and Chew was charged with recklessly endangering safety, use of a dangerous weapon. Chew's charge was based on the shots fired out the door from the hall in the apartment complex, not on those fired in the apartment. Chew was convicted after a jury trial.

¶ 3. Prior to trial, Chew requested a jury instruction based on WIS. STAT. § 939.48(1m). The trial court was not convinced that the entry by Lee and Lucas had been unlawful; there was testimony from the preliminary hearing that McCranie had unlocked the door to the apartment. However, at the close of evidence, when Chew renewed his request for the instruction, the court found the statute did not apply because Chew was outside his apartment. Chew also requested, and received, a general self-defense instruction, including the instruction that the jury could consider whether Chew had the opportunity to retreat. The jury rejected Chew's theory of self-defense.

¶ 4. We conclude that the trial court did not err in declining to give an instruction under the statute because Lee and Lucas were not in Chew's dwelling at the time of the shooting in question, but rather had left the actor's apartment and were running away from the apartment complex across an open parking lot.

---

front of Chew's apartment building to the Rangeline Inn without any barrier dividing the lot. There is also a detached garage next to Chew's building, between the apartment building and the Rangeline Inn.

## DISCUSSION

¶ 5. We decide this case on narrow grounds from the words of the statute itself. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (appellate court should decide on narrowest possible grounds). The statute requires that "[t]he person against whom the force was used was in the actor's dwelling." Wis. Stat. § 939.48(1m)(ar)2. There was no evidence presented that Lee and Lucas were in Chew's dwelling when Chew fired shots at them from the apartment building doorway. We do not address a number of issues raised by the parties: whether the men unlawfully entered Chew's apartment; whether Chew was in his dwelling when he fired the shots out of the apartment building doorway; or what instruction Chew should have received, had he been entitled to an instruction under the statute. Rather, we decide this case solely on the narrow grounds that the statute does not apply because Lee and Lucas were not in Chew's dwelling at the time of the shooting in question.

### Standard of Review

¶ 6. Statutory interpretation is a matter of law; we review the trial court's decision de novo. *State v. Williams*, 198 Wis. 2d 479, 486, 544 N.W.2d 400 (1996). We start with the language of the statute, and, if it is unambiguous, we apply the statute to the facts. *Id.* "Whether a statute is ambiguous is a question of law." *Petrowsky v. Krause*, 223 Wis. 2d 32, 35, 588 N.W.2d 318 (Ct. App. 1998) (citation omitted). We must apply a statute to avoid absurd or unreasonable results. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110.

373

■■

¶ 7. While the decision on the submission of jury instructions is normally within the discretion of the trial court, *State v. Hubbard*, 2008 WI 92, ¶ 23, 313 Wis. 2d 1, 752 N.W.2d 839, whether there are sufficient facts to require the trial court to give a certain jury instruction is a question of law we review de novo, *State v. Head*, 2002 WI 99, ¶ 44, 255 Wis. 2d 194, 648 N.W.2d 413. Finally, we can decide a case on grounds other than those used by the trial court. *State v. Earl*, 2009 WI App 99, ¶ 18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755.

*The Castle Doctrine Statute, WIS. STAT. § 939.48(1m)*

¶ 8. The Wisconsin legislature enacted the so-called castle doctrine,[3] WIS. STAT. § 939.48(1m), in 2011. *See* 2011 Wis. Act 94. The law provides as follows:

> (ar) If an actor intentionally used force that was intended or likely to cause death or great bodily harm, the court may not consider whether the actor had an opportunity to flee or retreat before he or she used force and shall presume that the actor reasonably believed that the force was necessary to prevent imminent death or great bodily harm to himself or herself if the actor makes such a claim under sub. (1) and either of the following applies:
>
> 1. The person against whom the force was used was in the process of unlawfully and forcibly entering the actor's dwelling, motor vehicle, or place of business, the actor was present in the dwelling, motor vehicle, or place of business, and the actor knew or reasonably believed that an unlawful and forcible entry was occurring.

---

[3] We use the commonly-used term "castle doctrine" to refer to the new law, though the Wisconsin Criminal Jury Instructions Committee has aptly noted that the substance of the "castle doctrine" varies from state to state. WIS JI-CRIMINAL 805A, at 2.

2. The person against whom the force was used was in the actor's dwelling, motor vehicle, or place of business after unlawfully and forcibly entering it, the actor was present in the dwelling, motor vehicle, or place of business, and the actor knew or reasonably believed that the person had unlawfully and forcibly entered the dwelling, motor vehicle, or place of business.

Sec. 939.48(1m)(ar).

¶ 9. In order for the statute to apply, entitling the defendant to a jury instruction on the castle doctrine defense, the defendant must show "some evidence" that either subdivision 1. or 2. applies. *See State v. Peters*, 2002 WI App 243, ¶¶ 21–22, 258 Wis. 2d 148, 653 N.W.2d 300 (certain self-defense instruction should be given when there is "some evidence" to support its application). Subdivision 1. applies when the unlawful or forcible entry is ongoing. Subdivision 2. applies when entry has already been made. Chew would potentially get the instruction under subdivision 2., as Lee and Lucas had already entered his apartment (and left) when Chew fired the shots in question. In order to qualify for the instruction under subdivision 2., Chew must present evidence that: Lee and Lucas were in Chew's dwelling, after entering unlawfully and forcibly, while Chew was in his dwelling, and Chew knew or reasonably believed that Lee and Lucas had unlawfully and forcibly entered Chew's dwelling.[4]

---

[4] We acknowledge that the statute is worded in the past tense, "person against whom the force was used *was* in the actor's dwelling," WIS. STAT. § 939.48(1m)(ar)2. (emphasis added), and that Lee and Lucas had been in Chew's dwelling. But the statute is written entirely in the past tense and contemplates contemporaneous facts: that those who had entered the dwelling unlawfully and forcibly were in the dwelling at the same time the actor was in the dwelling when the force was used.

375

¶ 10. Chew fails on the first showing: Chew has presented no evidence that Lee and Lucas were in Chew's dwelling at the time Chew fired the shots. In fact, all the testimony is that Lee and Lucas were fleeing Chew's apartment and were running across the parking lot when Chew fired the shots. The parking lot is not part of Chew's dwelling. We base this conclusion on the phrase "in the actor's dwelling" in subdivision 2. and the definition of dwelling from WIS. STAT. § 895.07(1)(h), which is incorporated into the statute in WIS. STAT. § 939.48(1m)(a)1.

*"In the Actor's Dwelling"*

■

¶ 11. Under WIS. STAT. § 939.48(1m)(ar)2., the person against whom the force was used must be "in the actor's dwelling." We find it significant that the singular possessive is used here. To possess means "to have and hold as property: have a just right to: be master of: OWN." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1770 (1993). The statute applies only if the men were in Chew's dwelling.

¶ 12. WISCONSIN STAT. § 939.48(1m)(a)1. imports the definition of the actor's dwelling set forth at WIS. STAT. § 895.07(1)(h), which states:

> (h) "Dwelling" means any premises or portion of a premises that is used as a home or a place of residence and that part of the lot or site on which the dwelling is situated that is devoted to residential use. "Dwelling" includes other existing structures on the immediate residential premises such as driveways, sidewalks, swimming pools, terraces, patios, fences, porches, garages, and basements.

Key in this definition is the requirement that the part of

376

the lot or site in question is "devoted to residential use." While the statute lists several parts of a residential lot that are part of "dwelling," it tellingly does not include a parking lot. *See State v. Popenhagen*, 2008 WI 55, ¶ 43, 309 Wis. 2d 601, 749 N.W.2d 611 (a statute that lists specific items may exclude those not listed). We can discern whether or not the list should be extended to include an apartment shared parking lot by looking at the items on the list. The common denominator of driveways, sidewalks, swimming pools, terraces, patios, fences, porches, garages, and basements as relates to an actor's "home" is that all are on the homeowner's lot—property over which the actor has exclusive control. The same would be true of tenants renting a single place of residence. An apartment building parking lot, on the other hand, is shared by all the tenants. It is not exclusive to Chew or "devoted to [the] residential use" of any one tenant. Sec. 895.07(1)(h). While Chew may have had the right to park there, the parking lot was not part of his own dwelling.[5]

¶ 13. At trial Lee testified that he had "run out the main door . . . ran straight towards . . . [the] motel or hotel." Lee was able to make "it around a corner so out of view." Lee confirmed several times during his testimony that he was in the parking lot when Chew fired the shots. Lucas heard gunshots as he ran into the parking lot, "trying to find cover." Chew confirmed that Lee and Lucas had fled into the parking lot, testifying

---

[5] This conclusion is underscored by the nature of this parking lot which had Chew's apartment building on one side and the inn on the other. There is no visible demarcation, fence, or gate. The most specific testimony we have about the location of Lee and Lucas as they were fleeing Chew's apartment does not even tell us where in the large parking lot they were when the shots were fired.

377

that he "seen 'em heading towards . . . the side of the garage." Regarding Lee and Lucas, Chew testified that "they weren't walking. They were running away from the apartment." The trial court did not err in determining not to give a castle doctrine instruction, because Lee and Lucas were not in Chew's dwelling when Chew fired the shots.

¶ 14. Our conclusion comports with the rationale behind the castle doctrine. Under the castle doctrine, one who is attacked in his or her own home can use force against the intruder to defend himself or herself. Chew was attacked in his home, this is undisputed. But Chew's use of deadly force at issue here occurred after the attack in Chew's home, when the men who had been in his apartment were fleeing across a parking lot. The castle doctrine does not justify continued use of deadly force against an intruder when that intruder is no longer in the actor's dwelling.

## CONCLUSION

¶ 15. The statute requires that "[t]he person against whom the force was used was in the actor's dwelling." WIS. STAT. § 939.48(1m)(ar)2. There was no evidence presented that Lee and Lucas, who were fleeing across a large parking lot, were in Chew's dwelling when Chew fired the shots from the apartment building doorway. We make our decision on these narrow grounds. Because Lee and Lucas were not in Chew's dwelling when Chew fired the shots in question, he was not entitled to an instruction under the castle doctrine statute.

*By the Court.*—Judgment affirmed.