**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 27, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* Wis. Stat. § 808.10 and Rule 809.62.

Appeal No. **2018AP1153-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2015CF2486**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

SOPHEA MOUTH,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment of the circuit court for Dane County: NICHOLAS J. McNAMARA, Judge. *Affirmed*.

        Before Lundsten, P.J., Blanchard, and Fitzpatrick, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.    Sophea Mouth appeals a judgment convicting him of second degree intentional homicide and attempted second degree intentional homicide.  Mouth was found guilty at a jury trial after he shot two men, one fatally, during a dispute over Mouth's occupation of property affected by foreclosure proceedings.  Mouth appeals the circuit court's decisions not to instruct the jury as follows:  (1) in order to evict occupiers from business premises that were subject to foreclosure a property owner needs to rely on a writ of assistance; and (2) Mouth did not have a duty to attempt to retreat before shooting the two men under the "castle doctrine," codified at WIS. STAT. § 939.48(1m) (2017-18).[1]  Separately, Mouth argues that the circuit court erroneously exercised its discretion in denying Mouth's request to allow him to demonstrate to the jury his impaired ability to walk.  We reject each argument and affirm.[2]

## BACKGROUND

¶2    Mouth ran a vehicle repair shop.  The shop was on property that Mouth's fiancée, Bophea So, attempted to purchase through a land contract.  However, So fell behind on payments to the property owner.  Mouth had interactions regarding payments with Thomas Dreger, the husband of the property owner.  The late payments led to an eventual stipulated foreclosure in Dane County Circuit Court that included a redemption period.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Mouth argues that we should grant a new trial because the combined effect of these alleged errors is that the real controversy was not tried.  *See* WIS. STAT. § 752.35 (court of appeals has discretionary power to reverse conviction in the interest of justice where "it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried.").  We decline to exercise our discretionary reversal authority because, for reasons we explain in the text, we reject each of Mouth's arguments.

¶3    After the redemption period expired, without Bophea So having redeemed, Dreger and a person we identify as GSP appeared at the shop property. This was in the middle of the day on a Friday in November 2015. Mouth was present on the property. Details regarding the brief interaction, which occurred primarily between Dreger and Mouth, were disputed at trial. It is undisputed, however, that Mouth pulled out a handgun and, at close range, shot Dreger three times, killing him, and shot GSP once, injuring him.

¶4    Mouth was charged with first degree intentional homicide and attempted first degree intentional homicide, both while using a dangerous weapon. The State's theory at trial was that Mouth was "at his wits end" on the day of the shootings over difficulties that included the foreclosure, and as a result "snapped" when confronted by Dreger.[3] The prosecutor argued that the evidence showed that Mouth felt that he had been "bullied for years," and shot the men due to long-building anger, "[n]ot because [he was] in fear of great bodily harm or imminent death."

¶5    Mouth's counsel argued self-defense. Counsel contended that, at the time of the shootings, Mouth, who had a "bum leg," felt that he was "backed" into "this little corner" by two larger, more able-bodied men. Counsel argued that Mouth feared that the men would break the leg that was not the "bum leg" (based on a threat that Mouth alleged Dreger had made on an earlier occasion) if Mouth

---

[3] For ease of reference here, and at some other places in this opinion, we refer to Dreger only, without referring to GSP, when addressing the confrontation with Mouth that resulted in the shootings. This is because there is no dispute that the pertinent relationship and interactions were those between Dreger and Mouth, and that GSP appeared merely to accompany Dreger on the day of the shootings. We recognize that one element of Mouth's self-defense theory at trial was that he was confronted by two men, not just one, but apart from that general point no argument by either side focuses on GSP's conduct in a way that matters to any issue we resolve on appeal.

did not submit to Dreger's demand that Mouth leave the property and allow Dreger to have the locks changed.

¶6 The jury convicted on the lesser included offenses of second degree intentional homicide and attempted second degree intentional homicide. Thus, the jury accepted, as to each count, the affirmative defenses of unnecessary defensive force (imperfect self-defense) under WIS. STAT. § 940.01(2)(b) ("Unnecessary defensive force"). *See **State v. Head***, 2002 WI 99, ¶69, 255 Wis. 2d 194, 648 N.W.2d 413 (imperfect self-defense applies where "a person intentionally caused a death but did so because [he or] she had an actual belief that [he or] she was in imminent danger of death or great bodily harm and an actual belief that the deadly force [he or] she used was necessary to defend [him or] her against this danger, if either of these beliefs was not reasonable") (emphasis in original omitted).

## DISCUSSION

## I. JURY INSTRUCTION ISSUES

¶7 The first two issues involve jury instructions proposed by the defense that the circuit court declined to give. The following is our standard of review:

> "'A circuit court has broad discretion in deciding whether to give a requested jury instruction.'" We will not overturn a circuit court's decision to give or not give a requested jury instruction absent an erroneous exercise of discretion. "However, we independently review whether a jury instruction is an accurate statement of the law applicable to the facts of a given case." "'If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist.'"

***State v. Anderson***, 2014 WI 93, ¶16, 357 Wis. 2d 337, 851 N.W.2d 760 (citations omitted).

4

## A. Property Law Instruction

¶8    Mouth requested that the court instruct the jury as follows:

> You are hereby informed that Thomas Dreger[,] in order to evict Bophea So and Sophea Mouth from the business premises in question that were foreclosed [as of] midnight [on] November 12, 2015, a Writ of [Assistance] had to first be signed by the court where the foreclosure action was filed.[4]

¶9    On this issue, neither party on appeal presents a developed argument addressing the substance of property law, such as whether a vendor on a land contract can or must use a writ of assistance to compel a vendee to vacate property under authority of a court decree issued in a foreclosure proceeding. In particular, Mouth merely asserts broadly that "self-help" evictions are "illegal" in Wisconsin, without attempting to explain how this assertion, whatever the details of the underlying legal rules, implicates any element of intentional homicide or self-defense. Notably, Mouth does not argue that the court's decision to deny the proposed instruction rested on an erroneous view of property law. Therefore, we resolve this issue without addressing any property law topic.

¶10    It is also not necessary, given the nature of the arguments on this issue, to address conflicting testimony at trial, including from Mouth, regarding the details of interactions between Mouth and Dreger leading up to the shootings.

¶11    With that context in mind, we now provide additional background regarding the proposed property law instruction. In the circuit court, Mouth

---

[4] The proposed instruction submitted by Mouth referred to "a Writ of Restitution," but defense counsel explained, in the course of advocating for this instruction, that he meant to refer to a writ of assistance.

argued that the defense needed the instruction to support an argument to the jury that, in telling Mouth to leave the property and announcing that he was going to change the locks on the shop, Dreger acted as a "wrongdoer" under civil law—one not acting "under the color of law." The court denied the instruction request by explaining, in pertinent part, that the court could see "no reason that fits in the facts of this case ... to [give] … instructions to the jury for law that is irrelevant. The issues of … homicide and self-defense [for the jury to resolve] are exactly the same," whether or not Dreger was violating any law governing evictions. The court explained that the proposed instruction, and the corresponding civil law "wrongdoer" argument proposed by Mouth, would be "misleading to the jury," because "[w]hether Dreger was right or wrong in self-help repossession or eviction doesn't change the core issues of homicide and self-defense."[5]

¶12     Given the argument that Mouth presented to the court for including the instruction and the court's relevancy rationale for rejecting that argument, we discern no ground to reverse the court's discretionary decision.

¶13     Mouth does not squarely address the court's relevancy rationale. Rather, Mouth essentially repeats his undeveloped argument that he was entitled to the requested instruction because Dreger's actions did not comport with the "proper course of action" under property laws.

---

[5] We note for context that the court made clear that, in rejecting the proposed property law instruction, the court was *not*: (1) permitting the State to affirmatively argue that Dreger's actions did *not* violate property laws; and (2) limiting Mouth's ability to introduce evidence of all actions taken by Dreger or GSP that could have supported a theory of self-defense or imperfect self-defense.

¶14 We reject Mouth's argument because the circuit court reasonably sought to avoid injecting a topic into the trial that, at least as presented by Mouth, involved irrelevant evidence and argument. That is, we agree with the circuit court that any proof regarding whether Dreger was a "wrongdoer" under property laws was irrelevant to the jury's consideration of self-defense. The self-defense and imperfect self-defense issues for the jury involved whether Mouth subjectively or reasonably believed that lethal force was necessary to terminate an unlawful interference *with his person*, not an unlawful interference with the disputed property. WIS. STAT. §§ 939.48(1) (self-defense); 940.01(2)(b) ("Unnecessary defensive force"). That is, the pertinent topic was whether Mouth subjectively or reasonably believed that Dreger was a physical threat to Mouth's person, not whether Dreger was otherwise acting unlawfully because he did not properly rely on a writ of assistance.

### B. "Retreat" Under Castle Doctrine

¶15 Mouth argues that the circuit court erroneously exercised its discretion in failing to instruct the jury, pursuant to WIS. STAT. § 939.48(1m), as follows, regarding Mouth's conduct:

> There is no duty to retreat. You must not consider evidence relating to whether the defendant had an opportunity to flee or retreat in deciding whether the state has proved that the defendant did not act lawfully in self-defense.

*See* WIS JI—CRIMINAL 805A (2018).[6] We disagree that the circuit court erroneously exercised its discretion in denying Mouth's request for this instruction under the so-called "castle doctrine."[7]

¶16 The castle doctrine, codified at WIS. STAT. § 939.48(1m), "generally provides that use of force is presumably justified when a person is defending himself ... against an unlawful and forcible intruder in that person's home." *See State v. Chew*, 2014 WI App 116, ¶1, 358 Wis. 2d 368, 856 N.W.2d 541. Under the standard jury instruction for self-defense, which the court gave here, jurors are permitted to consider the availability and feasibility of retreat when evaluating the reasonableness of the defendant's use of force. *See* WIS JI—CRIMINAL 810. When the castle doctrine applies, the jury is instructed that it may not consider whether the defendant had an opportunity to retreat. *See* WIS JI—CRIMINAL 805A.

¶17 To repeat, the circuit court agreed to instruct the jury regarding self-defense, but declined to give the castle doctrine retreat instruction. The court's reasoning was that, on the particular facts of this case, Mouth had not shown "the predicates that are required under" WIS. STAT. § 939.48(1m). The "predicates" the court referenced (the "predicate facts," in the words of the Law Note to WIS JI—

---

[6] All references to Wisconsin Jury Instructions are to the July 2018 version unless otherwise noted.

[7] The State argues that Mouth forfeited the argument that the circuit court erred by rejecting Mouth's proposed instruction regarding a duty to retreat under the castle doctrine because his counsel allegedly dropped the request for the instruction in the course of the relevant discussion in circuit court. We disagree that defense counsel withdrew his objection on this issue. Instead, when the transcript is read in proper context, it appears that defense counsel merely indicated that he was moving on from the topic after the court rejected his objection.

CRIMINAL 805A) are the two requirements set forth in subdivisions 1. and 2. of WIS. STAT. § 939.48(1m)(ar), which we now quote in pertinent part:

> (ar) If an actor [here, Mouth,] intentionally used force that was intended or likely to cause death or great bodily harm, the court may not consider whether the actor had an opportunity to flee or retreat before he or she used force and shall presume that the actor reasonably believed that the force was necessary to prevent imminent death or great bodily harm to himself or herself if the actor makes such a claim under sub. (1) [defining self-defense] and either of the following applies:
>
> 1. The person against whom the force was used [here, Dreger and GSP] was in the process of unlawfully and forcibly entering the actor's … place of business, the actor was present in the … place of business, and the actor knew or reasonably believed that an unlawful and forcible entry was occurring.
>
> 2. The person against whom the force was used was in the actor's … place of business after unlawfully and forcibly entering it, the actor was present in the … place of business, and the actor knew or reasonably believed that the person had unlawfully and forcibly entered the … place of business.

¶18 In determining that predicate facts were absent here, the court reasoned as follows. There was no dispute that Dreger visited the shop property on the day of the shootings as an agent of a vendor-landlord (Dreger's wife) during the foreclosure redemption period. In that capacity, Dreger had a right—in fact, the court observed, "probably … [a] duty"—to enter the property "to make sure that there is no ongoing waste or exposure to the elements and so forth." Thus, the court determined, Dreger was "not someone breaking into property" and therefore Mouth was not reacting to an unlawful and forcible entry. That is, regardless whether Dreger could lawfully direct Mouth to vacate the premises, there was no evidence to support a jury finding that Dreger had unlawfully entered the premises. Stated in the terms used in *Chew*, the court determined that there

9

was no factual basis to consider Dreger to be "an unlawful and forcible intruder." *See Chew*, 358 Wis. 2d 368, ¶1.

¶19 In addition, both sets of predicate facts in WIS. STAT. § 939.48(1m)(ar) require proof that a person in Mouth's position knew or reasonably believed that a person in Dreger's position was "unlawfully and forcibly entering" or had "unlawfully and forcibly enter[ed]" the place of business. Mouth does not argue that the jury was provided with evidence of Mouth's knowledge about applicable property law sufficient to support a finding that he held such a reasonable belief.

¶20 Mouth fails to address the substance of the court's determination that there was insufficient relevant proof, and thus effectively concedes that there was no evidence to support a finding of unlawful entry and that there was insufficient evidence regarding Mouth's knowledge of property law. Mouth merely points to his own trial testimony about actions that Dreger took after he was on the property, which could at best support a finding that Mouth had a subjective belief that Dreger's entry was unlawful. A subjective belief is insufficient. The defense requires proof of an unlawful and forcible entry and a "reasonable" belief regarding the nature of that entry. WIS. STAT. § 939.48(1m)(ar). Mouth fails to address the circuit court's finding about Dreger's status as an agent of the vendor-landowner and ignores the court's reliance on the plain language of § 939.48(1m)(ar). In particular, Mouth fails even to attempt to explain how the alleged conduct by Dreger that Mouth testified to at trial could be reasonably

considered "unlawful[] and forcibl[e]" at the time of his "entry" into Mouth's place of business.[8]

## II. DISABILITY DEMONSTRATION

¶21 Mouth argues that the circuit court erroneously exercised its discretion in denying his request to allow him to demonstrate his impaired ability by walking in front of the jury. We conclude that the circuit court properly exercised its discretion in determining that the probative value of a walking demonstration would have been substantially outweighed by the danger of unfair prejudice to the State.

¶22 Our standard of review and the substantive legal standard have been summarized as follows:

> The decision to admit or exclude demonstrative evidence is committed to the trial court's discretion. As long as the trial court demonstrates a reasonable basis for its determination, this court must defer to the trial court's ruling. In exercising its discretion, the trial court must determine whether the demonstrative evidence is relevant, WIS. STAT. §§ 904.01 and 904.02, and whether its probative value is substantially outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03.

***State v. Denton***, 2009 WI App 78, ¶11, 319 Wis. 2d 718, 768 N.W.2d 250 (footnotes and citations omitted).

---

[8] On the duty-to-retreat issue, the State makes an argument that we have trouble following. It may be to the effect that if Mouth was entitled to a self-defense instruction then he could not also have been entitled a castle doctrine instruction. Or, it may be to the effect that, if Mouth forfeited his request for a castle doctrine instruction, then the self-defense instruction is the only instruction on a related topic that he was entitled to receive. In any case, we affirm based on the circuit court's explanation for its ruling.

11

¶23    The following is additional background regarding pertinent events in the circuit court. Mr. Mouth testified that, as a result of childhood polio, he lost 50% of the use of his right leg and that his left leg "never regained any strength or muscle growth." As a result, he testified, he is unable to run or jump. However, there was also evidence at trial suggesting that Mouth was able to walk without a problem.

¶24    With this background, Mouth's counsel argued in the circuit court that Mouth should be allowed to demonstrate for the jury how he walks, so that the jury could see for itself that he is unable "to walk as normal people walk." The defense theory was that this demonstration would help the jury better understand Mouth's fear and his limited ability to retreat instead of resorting to lethal force to defend himself when confronted by Dreger and GSP.

¶25    In rejecting this request, the court said:

> I don't know how [the jury could determine that] Mr. Mouth walking here in front of the jury [is] how he walked on the day of the incident, versus how he's feeling today, versus what he normally did in the past. There is conflicting testimony even by friends of Mr. Mouth about how disabling this condition was. Some [witnesses] saying it wasn't a big deal, others saying no, he couldn't jump, he couldn't run, those kinds of things, those are in [evidence]. I don't know that having Mr. Mouth walk in front of the jury is going to prove anything.

¶26    The court allowed Mouth to publish four photographs to the jury showing Mouth's unclothed legs from front, back, and both sides. These photographs, which are in the record, plainly reveal Mouth's left leg to be less developed than his right leg. The court also permitted Mouth to play a video recording that purported to reflect his mobility disability.

¶27     The State agrees with Mouth that his "disability was relevant to his defense." This leaves the issue of whether it was reasonable for the court to determine that what the court saw as the negligible potential probative value of proposed walking demonstration was substantially outweighed by the risk of unfair prejudice. We conclude that this was a reasonable determination.

¶28     Mouth makes a series of unpersuasive assertions on this topic. It is sufficient to explain that his argument depends on the unexplained assumption that it should have been evident to the circuit court that the manner in which Mouth would walk in a courtroom demonstration would accurately show his capacity to walk or run on the day of the shootings. Mouth's argument fails to take into account his obvious motivation and ability to exaggerate his disability in ways that would have been difficult for jurors to detect, under the highly anticipated and controlled circumstances of a walk across the courtroom.

¶29     The circuit court demonstrated a reasonable basis for its determination and therefore we must defer to its ruling on this issue.[9]

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[9] Mouth refers in his briefing to the court's denial of his separate but related request to allow Mouth to display one unclothed leg for jury observation, but he fails to develop an argument on this topic. In any case, we would reject any such argument. As we have explained, the court allowed the jury to view clear, detailed photographs of Mouth's legs taken by the defense. It is hard to see how allowing Mouth to roll up the legs of his pants in court would have added any facts of value.