# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 16, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP789-CR**

Cir. Ct. No. **2017CT444**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

JAMIE ELLIN GRIMM,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Walworth County: PHILLIP A. KOSS, Judge. *Affirmed.*

¶1 NEUBAUER, C.J.[1] Jamie Ellin Grimm appeals from a judgment of conviction for operating a motor vehicle with a prohibited alcohol

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

concentration (second offense) and challenges the circuit court's order denying her motion to suppress the evidence. She asserts that the officer did not have reasonable suspicion to conduct a traffic stop when she flashed her high beams at the oncoming officer within 500 feet. We conclude that the officer had sufficient grounds to reasonably suspect that a traffic violation had taken place, justifying the stop. We affirm.

## BACKGROUND

¶2 On September 3, 2017, at about 11:32 p.m., Officer Sean Blanton was traveling eastbound on State Line Road in Walworth County when he observed a vehicle approaching westbound. In front of Blanton's squad car was another vehicle traveling eastbound. While Blanton testified that he believed that Grimm (driver of the westbound car) had her high beams on continuously as she approached him, it is undisputed that the squad car video of the stop shows that, as Grimm approached within 500 feet of Blanton, she flashed her high beams. Blanton did not flash his high beams at Grimm.[2]

¶3 Blanton activated his overhead emergency lights, turned around, and conducted a traffic stop of Grimm. She was subsequently arrested for operating a motor vehicle while intoxicated (OWI).

¶4 Grimm moved to suppress all evidence on the ground that Blanton initiated an unlawful stop as her high-beam flashing was not a traffic violation.

_____

[2] These facts are taken from the motion to suppress hearing and, as discussed later, the trial. Court and counsel also reviewed a video tape taken by the squad car and officer body cameras. Although the video tape was marked and received into evidence, it was not made a part of the appellate record.

After an evidentiary hearing and arguments of counsel, the circuit court denied the motion, concluding that the flashing of the high beams was a violation of WIS. STAT. § 347.12(1)(a) and therefore served as a sufficient basis for a stop. The court found that the high beams were not on continuously but that Grimm flashed them at Blanton within 500 feet. As explained by the circuit court:

> All right, I've reviewed the video again, and Officer Blanton does ask Ms. Grimm, "Do you know why I'm stopping you?" And she says "no." And he says: You flashed your brights at me; you can't do that. She gives some reasons why she did it.
>
> So it's not quite consistent. I got the impression from his testimony that she was—he was saying Ms. Grimm was driving with her brights continuously on, and that's how the testimony seemed.
>
> ….
>
> They are approaching each other on east/west road leading into Sharon. She's coming from Lake Geneva.
>
> I read [WIS. STAT. §] 347.12(1)(a).
>
> I have to interpret—well, if Blanton is saying she did not dim her headlights at all, clearly there is a basis to stop. If Blanton is saying you flashed them at me one time, that's a much closer case. But the statute only permits, apparently, according to the second sentence, when it says: This paragraph does not prohibit an operator from intermittently flashing at a vehicle [which] high beams are on as they approach, you could read that to say therefore, it does prohibit an operator from flashing high beams when it's not for that reason.
>
> So it appears it's a violation, according to the way the statute is read—written, a violation of [WIS. STAT. §] 347.12 either way.
>
> With that, by the way—and I'll make a finding that they were flashed, or at least that's what—based on the most— on the best evidence, which I think is what he immediately says to Ms. Grimm at the scene and how she is answering in context, as if they were flashed.

> So for any appellate purposes … I'll make a finding that they were not on constantly but were flashed. And when Officer Blanton—who frankly I believe gave credible testimony. I think he was summarizing that it was just driving with high beams in the way that he later—or was earlier described in the video.
>
> So I'm still finding that there was a basis to stop, as a violation of [WIS. STAT. §] 347.12(1)(a).
>
> ….
>
> And I do believe, as I added, that they were within 500 feet of each other. It's a safety issue. If you flash your high beams at people, it makes it difficult for that other driver to see; therefore it's logical as well. There really is no reason to flash high beams unless you're trying to get somebody else to turn theirs off.

¶5     Despite the absence of the squad car and body camera videos in the appellate record, the central facts found by the circuit court were not disputed by the parties and were confirmed at Grimm's subsequent trial. *See State v. Truax*, 151 Wis. 2d 354, 360, 444 N.W.2d 432 (Ct. App. 1989) (we are not confined to reviewing the evidence adduced at the suppression hearing, but may also consider pertinent trial evidence as well). Blanton testified at trial: that there was a car ahead of him in the eastbound lane of travel; that, as Grimm approached within 500 feet, she flashed her high beams at him; and that Grimm told him that she was looking at her GPS, "messing" with her headlights, and accidently turned on her high beams.

¶6     After a trial, a jury acquitted Grimm of OWI but found her guilty of operating a vehicle with a prohibited blood alcohol concentration. Grimm appeals.

# DISCUSSION

¶7     Whether evidence from a traffic stop should be suppressed is a question of constitutional fact. *State v. Truax*, 2009 WI App 60, ¶8, 318 Wis. 2d 113, 767 N.W.2d 369. When reviewing such questions, we will sustain a circuit court's findings of fact unless they are clearly erroneous, but we will decide de novo whether those facts satisfy the constitutional standard. *Id.*

¶8     Because an investigatory stop constitutes a "seizure" under the Fourth Amendment, the officer must be able to cite specific and articulable facts that have created a reasonable suspicion "that a person has committed or is about to commit a crime," to include reasonable suspicion that a noncriminal traffic law has been or is being violated. *County of Jefferson v. Renz*, 231 Wis. 2d 293, 310, 603 N.W.2d 541 (1999).

¶9     Grimm does not challenge the circuit court's finding that she briefly flashed her high beams at Blanton within 500 feet. Rather, she raises several other challenges both to the factual support for the circuit court's ruling as well as its conclusion of law that she violated WIS. STAT. § 347.12(1)(a). We reject each of Grimm's arguments.

¶10     WISCONSIN STAT. § 347.12 provides in part as follows:

> **(1)** Whenever a motor vehicle is being operated on a highway during hours of darkness or during a period of limited visibility, the operator shall use a distribution of light or composite beam directed high enough and of sufficient intensity to reveal a person or vehicle at a safe distance in advance of the vehicle, subject to the following requirements and limitations:
>
>     (a) Whenever the operator of a vehicle equipped with multiple-beam headlamps approaches an oncoming vehicle within 500 feet, the operator shall dim, depress or tilt the vehicle's headlights so that the

glaring rays are not directed into the eyes of the operator of the other vehicle. This paragraph does not prohibit an operator from intermittently flashing the vehicle's high-beam headlamps at an oncoming vehicle whose high-beam headlamps are lit.

¶11 Interpretation of a statute is a question of law, which we review de novo. *State v. Chew*, 2014 WI App 116, ¶6, 358 Wis. 2d 368, 856 N.W.2d 541. The language of the statute is the starting point and, if it is clear, we apply the statute to the facts. *Id.* The language should be given its common, ordinary meaning, should be interpreted within its context, and with the goal of discerning the meaning intended by the legislature. *State v. Moreno-Acosta*, 2014 WI App 122, ¶8, 359 Wis. 2d 233, 857 N.W.2d 908.

¶12 The language of WIS. STAT. § 347.12(1)(a) is clear and, when applied to these undisputed facts, shows a likely traffic violation, providing a sufficient basis to conduct a stop. Put simply, within 500 feet of an oncoming vehicle, the driver must dim his or her high beams so that the glaring rays are not directed into the eyes of the operator of the other vehicle. It is undisputed that Grimm flashed her high beams at Blanton within 500 feet. That plainly allowed Blanton to reasonably suspect that a traffic law was violated and that a stop could be conducted. *See State v. Houghton*, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143.

¶13 Grimm argues that the statute requires a showing that the flashing impaired the vision of the oncoming driver, pointing to the requirement that the headlamps must be dimmed, depressed or tilted "so that the glaring rays are not directed into the eyes of the operator." WIS. STAT. § 347.12(1)(a). *State v. Tomaszewski*, 2010 WI App 51, 324 Wis. 2d 433, 782 N.W.2d 725, rejected

Grimm's argument that the statute provides a separate element that "glaring rays" had an impact.

¶14    In *Tomaszewski*, an officer observed a vehicle with its high beams on and traveling within 400 feet of another vehicle, dimming his high beams only as he passed the other vehicle.  *Id.*, ¶3.[3]  The officer initiated a stop, which led to an OWI arrest.  *Id.*, ¶4.  The defendant argued that there was no reasonable suspicion for the stop as there was no showing that the "glaring rays" of his high beams were reflected into the other driver's eyes.  *Id.*, ¶8.  Upon reviewing WIS. STAT. § 347.12(1)(b), we rejected any need for proof that the lights were reflected into the other driver's eyes.  *Tomaszewski*, 324 Wis. 2d 433, ¶10.  The statute requires a driver to dim their high beams when within 500 feet of another vehicle. *Id.*  The court explained that the statute's reference to preventing the "glaring rays" was a description of the statute's purpose as opposed to a necessary element for its application.  *Id.*  "[D]rivers are in no position to determine whether their vehicle's high beams glare into the eyes of other drivers.  To avoid this problem, the statute assumes the use of high beams within 500 feet will cause impairment, and prohibits their use."  *Id.*  Under WIS. STAT. § 347.12(1)(a), no evidence is

---

[3] Although para. (b) of WIS. STAT. § 347.12(1) addresses a driver approaching or following from the rear, the 500-foot prohibition and exception for intermittent flashing are the same as para. (a).

required as to whether the glaring rays of the high beams were actually reflected or directed into and affected the eyes of the other driver.[4]

¶15 Lastly, Grimm asserts that her momentary flashing of her high beams was not a traffic violation, as the statute does not prohibit intermittent flashing "at an oncoming vehicle whose high-beam headlamps are lit." WIS. STAT. § 347.12(1)(a). The State, Grimm argues, has the burden of proof at a suppression hearing and failed to produce evidence to show that Blanton did not have his high beams on at the time. We reject her argument.

¶16 The circuit court's ruling was premised on its conclusion that there was no evidence that Blanton had his high beams on. The circuit court was fully aware of the "intermittent flashing" exception and addressed it. The court noted that the statute

> does not prohibit an operator from intermittently flashing at a vehicle whose high beams are on as they approach, you could read that to say therefore, it does prohibit an operator

---

[4] Grimm urges us to consider cases from other jurisdictions where the courts interpreted their high-beam statutes to require proof that the other driver's vision was impaired. We decline to do so for several reasons. Although we certainly may consider the rationales of out-of-state cases for assistance, we are not required to do so, the cases are not binding, and there is little need when our own precedent is so clear. *See **Beecher v. LIRC***, 2003 WI App 100, ¶16 n.3, 264 Wis. 2d 394, 663 N.W.2d 316. Further, because the holding of ***State v. Tomaszewski***, 2010 WI App 51, 324 Wis. 2d 433, 782 N.W.2d 725, is so clear and on point, we are obliged to follow it. *See **Willowglen Academy-Wisconsin, Inc. v. Connelly Interiors, Inc.***, 2008 WI App 35, ¶18 n.6, 307 Wis. 2d 776, 746 N.W.2d 570 ("We are bound to follow our own precedent" and only our supreme court has the power to modify or overrule a court of appeals' opinion). In addition, although the statute in the principal out-of-state case relied upon by Grimm, *see **Sarber v Commissioner of Public Safety***, 819 N.W.2d 465 (Minn. Ct. App. 2012), is somewhat similar to Wisconsin's, there is at least one significant difference. Namely, Wisconsin's statute provides the driver with a specific list of actions to take—dim, depress, or tilt—the high beams, whereas the Minnesota statute does not, instead generally telling the driver to use his or her lights in a way that will not project into the eyes of the oncoming driver, which may make the need for proof of impairment more sensible. *See* WIS. STAT. § 347.12(1)(a); MINN. STAT. § 169.61(b) (2011). Finally, Grimm herself points out other cases that interpret such statutes in the manner that we do.

> from flashing high beams when it's not for that reason [when the other vehicle's high beams are not lit].
>
> So it appears it's a violation [of WIS. STAT. § 347.12(1)(a)].
>
> ….
>
> There really is no reason to flash high beams unless you're trying to get somebody else to turn theirs off.

The court further stated, "I'll make a finding that [Grimm's high beams] were flashed" and a "finding that there was a basis to stop, as a violation of" the statute. When the circuit court determined that Grimm did not fall within the "intermittent flashing" exception, it found that Blanton's high beams were not lit, even if implicitly. *See State v. Boyd*, 2011 WI App 25, ¶8, 331 Wis. 2d 697, 797 N.W.2d 546 (noting a trial court's findings "may be implicit in the trial court's ultimate conclusion").

¶17    This finding is not clearly erroneous. Significantly, Grimm points to no evidence, much less any argument made before the circuit court, indicating that Blanton's high beams were on. The evidence indicates otherwise. Just before the stop, Blanton was traveling eastbound behind another car, making it unlikely that Blanton would have his high beams on. According to the circuit court, the video showed Grimm apologizing for flashing her high beams, indicating that she mistakenly was hitting the buttons, which Blanton confirmed at trial when he testified that Grimm acknowledged turning on her high beams was an accident, all further evincing that flashing her high beams was not done to tell Blanton to dim his. When asked if he flashed his high beams at Grimm, Blanton testified that he did not. This testimony, combined with Grimm's statements immediately upon the stop and the lack of any contrary evidence, supports a reasonable inference that Blanton's high beams were not on. Finally, it is not as though Grimm was unable

or prohibited from establishing whether Blanton had his high beams on, as she had the opportunity at both the suppression hearing and the later trial to cross-examine him on this point. The circuit court's conclusion that Blanton did not have his high beams on was not clearly erroneous.

¶18 In sum, Grimm flashed her high beams at Blanton within 500 feet. Accordingly, Grimm's violation of WIS. STAT. § 347.12(1)(a) provided reasonable suspicion for Blanton to conduct a traffic stop.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.