**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 17, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP1718**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019SC31772

**IN COURT OF APPEALS**
**DISTRICT I**

---

LINCOLN PARK MHC WI, LLC,

PLAINTIFF-APPELLANT,

V.

PATRICK GLYNN,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: PEDRO COLON, Judge. *Reversed and cause remanded with directions*.

¶1 DONALD, J.[1] Lincoln Park MHC WI, LLC, appeals an order of the circuit court in which the circuit court dismissed Lincoln Park's eviction action against Patrick Glynn. Lincoln Park contends that the record does not support the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. §752.31(2)(a) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

circuit court's application of the castle doctrine in rendering its decision. We agree. Accordingly, we reverse the order and remand the matter for an evidentiary hearing.

## BACKGROUND

¶2      Lincoln Park owns and operates Lincoln Park Manufactured Home Community (MHC) in West Allis.[2]  Patrick Glynn is a tenant of the MHC.  On June 13, 2019, Lincoln Park issued Glynn a "5-Day Notice to Terminate Tenancy for Criminal Activity[.]"  The notice claimed that on June 12, 2019, Glynn held an employee at gunpoint while the employee was trying to perform maintenance on the property.  Glynn did not vacate the premises, prompting Lincoln Park to file an eviction pursuant to WIS. STAT. § 704.17(3m)(b), which permits a landlord to file an eviction notice if the tenant "engages in any criminal activity that threatens the health or safety of the landlord or an agent or employee of the landlord[.]"  *See **id.***  Glynn contested the eviction and the matter proceeded to trial.

¶3      At trial, West Allis Police Officer Jonathan Cerqua testified that on June 12, 2019, he responded to a phone call from Lincoln Park management, informing police that "someone in one of the trailers pointed a shotgun at a maintenance employee."  Cerqua stated that when he arrived at the MHC, he made contact with Jason Stucco, a maintenance employee for the property.  Cerqua testified that Stucco explained that he was installing backflow preventers on the

---

[2] The complaint names Lincoln Park MHC WI, LLC as the plaintiff and is signed by the company's manager.  The appellant's brief names Lincoln Park MHC WI, LLC as the owner of the MHC.  However, at trial, Daniel Joas, the regional manager of RHP Properties, testified that RHP's "portfolio" includes Lincoln Park.  Therefore, it is unclear from the record which entity actually owns the MHC. Because Lincoln Park MHC WI, LLC is the company named on the complaint, we refer to that company as the owner of the MHC.

outside exterior hoses of all of the MHC lots. Stucco told Cerqua that he was required "by law" to install backflow preventers to prevent foreign substances from contaminating the water supply. Cerqua testified that Stucco informed him that when he reached lot number 625, Stucco noticed that the interior door and a window were open. Stucco called out into the residence to identify himself and began installing the backflow preventer on the property's hose when he did not receive a response. Stucco told Cerqua that while he was working, Glynn emerged from the door next to the hose and pointed a double barreled shotgun at Stucco while demanding to know what Stucco was doing. Stucco told Cerqua that he explained himself and that Glynn was pointing a gun "directly at [Stucco's] head and then covering him with his body by going from his head to his body up and down for approximately 45 [seconds]." Stucco told Cerqua that Glynn stated: "next time let me know before I blow your fucking head off."

¶4    Cerqua further testified that Stucco was wearing a maintenance uniform. Stucco told Cerqua that he feared for his safety, but acknowledged that Glynn did not have prior notice that maintenance work was being performed on the property that day. Cerqua testified that Glynn was subsequently arrested and the District Attorney's Office indicated that it would charge Glynn with disorderly conduct while armed, but that as of trial Cerqua did not see an electronic record of the charges.

¶5    Daniel Joas, the regional manager for RHP Properties, the MCH's management company, testified that per City of West Allis orders, Stucco was on the MHC lots on June 12, 2019, to install backflow preventers on the hoses outside of the homes on the lot. Joas stated that shortly after the incident between Stucco and Glynn, he was notified that police were on the premises. When Joas arrived at the property, Stucco told him a story identical to that described by Cerqua's

testimony. Joas stated that RHP did not provide notice to MHC tenants about the maintenance work. Joas also stated that following the incident, Glynn was given a five-day notice of eviction, but that as of the day of the trial, Glynn still remained a tenant. Neither Stucco nor Glynn testified.

¶6 The circuit court denied Lincoln Park's eviction motion, stating:

> The problem I have with this case, you know—you know, really [on] both sides is that, one, there isn't notice; he's going on the property, that is, it's a minor intrusion; it's not even an intrusion; it's required by the [C]ity of West Allis. It is a requirement to be met. There isn't notice for it. And then there's this disproportionate response to it, which is a gun; and he is then threatened with life for purposes of changing a hose stopper. Is that reasonable? … I don't think it's reasonable to pull out the gun and aim it at someone; but it is legal.
>
> It's legal to aim a gun at anyone you want. That's what the legislature has passed as law. That's what the law we live under. And I think in this case—[g]iven the facts, I don't think this rises to the level of criminal activity.
>
> So I'm going to dismiss the action. I'm not going to evict him. And this is based on the castle doctrine, which allows a person to protect their home. There wasn't a notice regarding the entry.

This appeal follows.

## DISCUSSION

¶7 Lincoln Park raises multiple arguments on appeal, but the crux of its argument is that the circuit court incorrectly interpreted and applied Wisconsin's "castle doctrine." Specifically, Lincoln Park contends that the record was

4

insufficient for the court to make the findings necessary for the application of the doctrine.[3]  We agree.

¶8      "Our review requires us to construe a statute and apply it to the facts of the case." *Warehouse II, LLC v. DOT*, 2006 WI 62, ¶4, 291 Wis. 2d 80, 715 N.W.2d 213.  Ordinarily, a circuit court's "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [circuit] court to judge the credibility of the witnesses."  WIS. STAT. § 805.17(2). However, the application of a statute to the facts of a case is a question of law this court reviews *de novo*, although the court benefits from the analysis of the circuit court. *See Warehouse II*, 291 Wis. 2d 80, ¶4.

¶9      The castle doctrine, codified by WIS. STAT. § 939.48(1m), "generally provides that use of force is presumably justified when a person is defending himself ... against an unlawful and forcible intruder in that person's home." *State v. Chew*, 2014 WI App 116, ¶1, 358 Wis. 2d 368, 856 N.W.2d 541. The statute states:

> (ar) If an actor intentionally used force that was intended or likely to cause death or great bodily harm, the court may not consider whether the actor had an opportunity to flee or retreat before he or she used force and shall presume that the actor reasonably believed that the force was necessary to prevent imminent death or great bodily harm to himself or herself if the actor makes such a claim under sub. (1) and either of the following applies:

---

[3] Glynn contends that the record is insufficient because Lincoln Park failed to include a police report discussed at trial and that we should affirm the circuit court because Lincoln Park bore the responsibility of providing a complete record. Lincoln Park contends that the police report—Glynn's exhibit at trial—was not an officially marked exhibit at trial and was not relied upon by the circuit court. In reviewing the transcript, it is clear that the circuit court did not rely on the police report in rendering its decision. Rather, the court considered the testimony of the two witnesses.

1. The person against whom the force was used was in the process of unlawfully and forcibly entering the actor's dwelling, motor vehicle, or place of business, the actor was present in the dwelling, motor vehicle, or place of business, and the actor knew or reasonably believed that an unlawful and forcible entry was occurring.

2. The person against whom the force was used was in the actor's dwelling, motor vehicle, or place of business after unlawfully and forcibly entering it, the actor was present in the dwelling, motor vehicle, or place of business, and the actor knew or reasonably believed that the person had unlawfully and forcibly entered the dwelling, motor vehicle, or place of business.

*See* WIS. STAT. § 939.48(1m)(ar)1.-2.

¶10 Lincoln Park argues that the circuit court erroneously applied the castle doctrine to the facts of this case because the record does not support such a finding. We note first, that neither party even raised the castle doctrine at trial. The circuit court *sua sponte* raised the doctrine, which, as relevant here, applies when an actor *intentionally uses force* that is *intended* or likely to cause death or great bodily harm *if the actor knew or reasonable believed* that a person has *unlawfully or forcibly* entered the actor's dwelling. Accordingly, the castle doctrine requires a finding of intent. Because Glynn did not testify and no other evidence on the record addressed Glynn's state of mind at the time of the incident, there was no evidence suggesting that Glynn intended to cause death or great bodily harm to Stucco. There was also no evidence suggesting that Glynn knew or reasonably believed that Stucco unlawfully or forcibly entered the dwelling, and no evidence suggesting that Stucco actually did so. Both of the witnesses who testified about the incident discussed what they learned from Stucco. Neither witness personally observed the incident, nor did either witness discuss any interactions with Glynn relevant to the applicability of the castle doctrine.

6

Accordingly, we agree with Lincoln Park that the record was insufficient for the circuit court to make its findings based on the castle doctrine.

¶11　Glynn argues that WIS. STAT. § 939.48(1)—the self-defense statute—is the appropriate statute for this court to consider. Glynn contends that the circuit court's mere use of the term "castle doctrine" does not undermine his self-defense argument. Because the issue of self-defense was raised neither by the parties, nor by the circuit court at trial, we decline to address this argument.

¶12　For the foregoing reasons, we reverse the order and remand for an evidentiary hearing consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.